# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| **PINEY WOODS ER III, LLC; PINEY WOODS ER I, LLC; EXCEL ER PHYSICIANS EAST TEXAS, PLLC; AMERICA'S ER SITE 001; & WOODLANDS LONE STAR EMERGENCY PHYSICIANS GROUP, PLLC** | § § § § § § § | **Civil Action No. 5:20-cv-00041-RWS** |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BLUE CROSS BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY,** | § § § § § | |
| | § | |
| *Defendant*. | § | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ....................................................................................................5

STATEMENT OF ISSUES .......................................................................................9

STANDARD OF REVIEW .....................................................................................10

ARGUMENT .......................................................................................................11

I.  COUNTS I, II, AND III: CAUSES OF ACTION PLAINTIFFS PURPORT TO
    BRING AS ASSIGNEES ............................................................................... 11

    A.  The Court Lacks Subject-Matter Jurisdiction Over Claims Plaintiffs Purport
        to Bring Based on Alleged Assignments Made by Unidentified Assignors ..........11

    B.  Counts I and II: The Complaint Fails to State a Claim for Breach of Contract
        or Breach of ERISA § 1132(a)(1)(B) because Plaintiffs Fail to Identify the
        Claims or Plans at Issue .....................................................................................13

    C.  Count III: The Complaint Fails to State a Claim for Bad Faith Because
        There is No Special Relationship Between Plaintiffs and BCBSTX and
        Plaintiffs' Allegations are Conclusory..................................................................16

    D.  In the Alternative, Plaintiffs Should be Required to File a More Definite
        Statement to Identify the Claims, Health Plans, and Purported Assignments
        at Issue .............................................................................................................18

II. COUNTS IV, V, AND VI:   THE COMPLAINT FAILS TO STATE CLAIMS
    FOR RELIEF FOR THE CAUSES OF ACTION PLAINTIFFS ASSERT ON
    THEIR OWN BEHALF................................................................................ 19

    A.  Count IV: The Complaint Fails to State a Claim For Negligent
        Misrepresentation Because Plaintiffs Do Not Plead Reliance on Alleged
        Misrepresentations ...........................................................................................19

    B.  Count V: The Complaint Fails to State a Claim for Unjust Enrichment or
        Quantum Meruit Because Plaintiffs Did Not Confer a Benefit on BCBSTX........21

    C.  Count VI: The Complaint Fails to State a Claim For Tortious Interference
        With Prospective Business Relations Because Plaintiffs Do Not And
        Cannot Plead a Reasonable Probability of a Contractual Relationship with
        Potential Patients...............................................................................................23

III.     COUNT VII: THE COMPLAINT FAILS TO STATE A CLAIM FOR
         DECLARATORY JUDGMENT BECAUSE PLAINTIFFS' CLAIM IS BASED
         ON UNIDENTIFED CONTRACTS, PAST CONDUCT, AND SEEKS
         RESOLUTION OF ISSUES RESOLVED IN OTHER CLAIMS ................................... 27

CONCLUSION.......................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Almanza v. Transcon. Ins. Co.*,
  No. 05-95-00960-CV, 1996 WL 429303
  (Tex. App.—Dallas July 23, 1996, no pet.) ....................................................................25

*Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*,
  No. 4:13-CV-2011, 2014 WL 3543720 (S.D. Tex. July 14, 2014) ........................................37

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................19

*Baker v. Greater N. Energy Inc.*,
  No. 3:14-CV-0240-B, 2016 WL 2914757 (N.D. Tex. May 18, 2016) ...................................24

*Bardowell v. Mut. of Omaha Ins. Co.*,
  985 F.2d 557 (5th Cir. 1993) ...........................................................................................15

*Bauer v. Tex.*,
  341 F.3d 352 (5th Cir. 2003) ...........................................................................................38

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................19, 23, 34

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,
  4:15-CV-00627, 2016 WL 8648927 (S.D. Tex. Mar. 29, 2016) ..........................................36

*Borst v. Chevron Corp.*,
  36 F.3d 1308 (5th Cir. 1994) ...........................................................................................21

*Bracken v. Wells Fargo Bank, N.A.*,
  13 F. Supp. 3d 673 (E.D. Tex. 2014),
  *aff'd*, 612 F. App'x 248 (5th Cir. 2015)..............................................................................28

*Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*,
  88 F.3d 347 (5th Cir. 1996) .........................................................................................28, 29

*DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*,
  No. 4:11-CV-1355, 2016 WL 7177881 (S.D. Tex. Dec. 8, 2016).........................................31

*David O. Kemp, P.C. v. Nationwide Agribusiness Ins. Co.*,
  No. 3:11-CV-1745-N, 2012 WL 13019688 (N.D. Tex. June 12, 2012)................................38

*Diaz v. Kettley Trucking, Inc.*,
  1:20-CV-51, 2020 WL 1666166 (E.D. Tex. Apr. 2, 2020)...................................................19

*Ears & Hearing, P.A. v. Blue Cross & Blue Shield of Tex.*,
  No. 1:18-CV-00726-LY, 2019 WL 3557349 (W.D. Tex. Aug. 5, 2019) ...............................37

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*,
  614 F. App'x 731 (5th Cir. 2015) ...........................................................................................24

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*,
  962 F. Supp. 2d 887 (S.D. Tex. 2013),
  *rev'd in part on other grounds*, 614 F. Appx. 731 (5th Cir. 2015)........................................31

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*,
  No. CV H-11-2745, 2017 WL 1710567 (S.D. Tex. May 3, 2017) .........................................24

*Emerus Hosp. v. Health Care Serv. Corp.*,
  13 C 8906, 2016 WL 946916 (N.D. Ill. Mar. 14, 2016) ........................................................30

*Encompass Office Sols., Inc. v. Ingenix, Inc.*,
  775 F. Supp. 2d 938 (E.D. Tex. 2011) ...............................................................................30, 31

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  824 F.3d 507 (5th Cir. 2016) .................................................................................................37

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011) .................................................................................................14

*Fustok v. UnitedHealth Grp., Inc.*,
  No. 12-cv-787, 2013 WL 12188582 (S.D. Tex. Jan. 18, 2013)..............................................30

*Gerber v. Nw. Hosp. Ctr., Inc.*,
  943 F. Supp. 571 (D. Md. 1996) ............................................................................................30

*Green Beret Found. v. Paquette*,
  SA-18-CV-1044-XR, 2019 WL 6048021 (W.D. Tex. Aug. 20, 2019) ..................................34

*Gunn v. McCoy*,
  554 S.W.3d 645 (Tex. 2018)...................................................................................................17

*Haggard v. Bank of the Ozarks, Inc.*,
  547 F. App'x 616 (5th Cir. 2013) ..........................................................................................37

*Harris Cty. Tex. v. MERSCORP Inc.*,
  791 F.3d 545 (5th Cir. 2015) .................................................................................................32

*Haygood v. De Escabedo*,
  356 S.W.3d 390 (Tex. 2011)...................................................................................................18

*I Love Omni, LLC v. Omnitrition Int'l, Inc.*,
  3:16-CV-2410-G, 2017 WL 3086035 (N.D. Tex. July 20, 2017) ....................................34, 35

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga. Inc.*,
  995 F. Supp. 2d 587 (N.D. Tex. 2014) .................................................................23

*Innova Hospital San Antonio v. Blue Cross & Blue Shield of Ga.*,
  892 F.3d 719 (5th Cir. 2018) ....................................................................11, 23, 24

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)....................................................................................19, 21

*M-I LLC v. Stelly*,
  733 F. Supp. 2d 759 (S.D. Tex. 2010) ...............................................................35

*Marathon Fin. Ins. Co., Inc., RRG v. Ford Motor Co.*,
  5:05-CV-16-DF, 2006 WL 8441917 (E.D. Tex. Mar. 28, 2006).....................32, 35

*Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*,
  904 F.2d 236 (5th Cir. 1990) ........................................................................21, 22

*Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.*,
  16 F. Supp. 3d 767 (S.D. Tex. 2014) ..................................................................27

*Mission Toxicology, L.L.C. v. UnitedHealthcare Ins. Co.*,
  5:17-CV-1016-DAE, 2018 WL 2222854 (W.D. Tex. Apr. 20, 2018)....................31

*In re N. Cypress Med. Ctr. Operating Co., Ltd.*,
  559 S.W.3d 128 (Tex. 2018).................................................................................17

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
  512 F.3d 137 (5th Cir. 2007) ...............................................................................15

*Old Am. Ins. Co. v. Lincoln Factoring, LLC*,
  No. 2015-005979, 2018 WL 5832111
  (Tex. App.—Fort Worth Nov. 8, 2018, no pet.) ....................................................25

*Radenbaugh v. State Farm Lloyds*,
  No. 4:13-CV-399-A, 2013 WL 4442024 (N.D. Tex. Aug. 16, 2013) ....................26

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ...............................................................................19

*Reynolds v. Mercy Hosp.*,
  861 F. Supp. 214 (W.D.N.Y. 1994)......................................................................30

*Santander Consumer USA, Inc. v.*
  *Zeigler Chrysler Dodge Jeep-Downers Grove, LLC*,
  3:16-CV-3310-B, 2017 WL 2729998 (N.D. Tex. June 26, 2017).....................35, 36

*Shaban v. Hertz Corp.*,
   CV H-19-0987, 2020 WL 2544757 (S.D. Tex. May 19, 2020)................................................15

*SHS Inv. v. Nationwide Mut. Ins. Co.*,
   798 F. Supp. 2d 811 (S.D. Tex. 2011) ......................................................................26, 28, 29

*Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*,
   99 F.3d 746 (5th Cir. 1996) ....................................................................................................36

*Sims v. RoundPoint Mortg. Servicing Corp.*,
   No. 6:16CV1349, 2018 WL 1308967 (E.D. Tex. Feb. 13, 2018),
   *aff'd*, 760 F. App'x 306 (5th Cir. 2019)..................................................................................36

*Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*,
   No. 5-16-CV-01094-FB-RBF, 2018 WL 4211741 (W.D. Tex. Sept. 4, 2018) .......................24

*Tex. Spine & Joint Hosp., Ltd. v. Blue Cross & Blue Shield of Tex., a Div. of*
   *Health Care Serv. Corp.*, No. 6:14-CV-952-JDL, 2015 WL 13649419
   (E.D. Tex. May 28, 2015) ..................................................................................................16, 31

*Turner v. Peerless Indemn. Ins. Co.*,
   No. 07-17-00279-CV, 2018 WL 2709489
   (Tex. App.—Amarillo June 5, 2018, no pet.) .........................................................................26

*UnitedHealthcare Servs., Inc. v. Next Health, LLC*,
   No. 3:17-CV-0243-S, 2018 WL 3520429 (N.D. Tex. July 20, 2018) ...............................24, 27

*USAA Tex. Lloyds Co. v. Menchaca*,
   545 S.W.3d 479 (Tex. 2018)....................................................................................................26

## Statutes/Rules

29 U.S.C. § 1132.......................................................................................................... *passim*

42 U.S.C. § 300gg-19a(b)(1) ...............................................................................................29

45 C.F.R. § 147.138(b)(3)(i)(B).............................................................................................17

Fed. R. Civ. P. 8(a) ..................................................................................................10, 19, 23

Fed. R. Civ. P. 9(b) ..................................................................................................19, 28, 29

Fed. R. Civ. P. 12(b) ..................................................................................................... *passim*

Tex. Admin. Code § 3.3701(d) ..............................................................................................37

Tex. Admin Code § 131.46......................................................................................................29

Tex. Health & Safety Code § 254.153 ............................................................................29

Defendant Blue Cross Blue Shield of Texas, a division of Health Care Service Corporation, a Mutual Legal Reserve Company, ("BCBSTX"), respectfully moves this Court to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 8, 12(b)(1) and 12(b)(6).  In the alternative, BCBSTX also moves for a more definite statement pursuant to Rule 12(e).

## PRELIMINARY STATEMENT

Plaintiffs are three limited liability companies that operated free-standing emergency centers ("FECs") (the "FEC Plaintiffs"), and two professional limited liability companies that employed physicians ("the Physician Association Plaintiffs") to staff the FECs. (Compl. ¶¶ 1–5). Plaintiffs claim that BCBSTX purposefully under-reimbursed Plaintiffs for their services provided to unidentified patients—who ostensibly had coverage under BCBSTX insured or administered health plans—in a "concerted effort" to drive Plaintiffs out of business.  (*See, e.g.,* Compl. ¶¶ 1–3).[1] Specifically, Plaintiffs assert seven causes of action against BCBSTX in the Complaint, all generally premised on factually deficient and legally incorrect theories of recovery for alleged under-payment or non-payment of benefits allegedly due under Plaintiffs' patients' insurance policies or health benefit plans.

These causes of action can be divided into three categories.  The first category consists of causes of action for which Plaintiffs do not seek to vindicate their own rights to monetary relief, but rather to assert the contract and ERISA-based rights allegedly assigned to Plaintiffs by unidentified third-parties: a cause of action for benefits due under ERISA 1132(a)(1)(B) (Count I); breach of contract (Count II); and bad faith insurance practices (Count III).  The second category consists of causes of action for monetary relief Plaintiffs bring directly: negligent

---

[1] Plaintiffs' Complaint contains two sets of paragraphs one through three.  The paragraphs cited here refer to the first set of paragraphs one through three, contained on the first two pages of Plaintiffs' Complaint.

misrepresentation (Count IV); quantum meruit/unjust enrichment (Count V); and tortious interference with prospective business relations (Count VI).  The final category consists of Plaintiffs' claim for non-monetary relief pursuant to the Declaratory Judgement Act: (Count VII).

<u>Category One:</u>        As an initial matter, all causes of action in the first category (Counts I –III) should be dismissed because the Complaint lacks allegations sufficient to establish subject matter jurisdiction.  In these Counts, Plaintiffs do not assert their own contractual or ERISA rights—because they have none—but rather invoke the Court's jurisdiction based on the bald assertion that some unknown number of unidentified persons executed written assignments sufficient to transfer their rights under unidentified contracts and ERISA-governed health benefit plans to Plaintiffs.  Plaintiffs do not identify how many assignors there are, who the assignors are, or how and to what degree these assignors allegedly assigned their rights to Plaintiffs to enable Plaintiffs to bring these claims.  Further, the Complaint offers no information regarding the number or identity of the claims for which Plaintiffs seek payments or any of the related health benefit plans or contracts.  The Court thus has no basis upon which to conclude Plaintiffs' claims are plausible or that Plaintiffs have standing to sue as assignees of the insureds' plans.

Counts I–III should also be dismissed under Rule 12(b)(6).  First, the deficiencies identified above require dismissal of Counts I and II for failure to state a claim for breach of contract or violation of ERISA § 1132(a)(1)(B).  In addition to failing to identify any actual claims Plaintiffs contend were underpaid, Plaintiffs also fail to identify any health benefit plans or contracts that they seek payments under, giving the Court no basis upon which to conclude Plaintiffs' claims are plausible.  Even under the most liberal reading of the Fifth Circuit's decision in *Innova Hospital San Antonio v. Blue Cross & Blue Shield of Georgia*, 892 F.3d 719 (5th Cir. 2018), Plaintiffs have

failed to plead sufficient facts regarding the claims, contracts and health plans that allegedly form the foundation of this lawsuit.

Second, Count III likewise should be dismissed because Plaintiffs rely solely on conclusory allegations to support the claim.  Rather than substantiate their tort claim with factual allegations regarding supposed violations by BCBSTX, Plaintiffs merely allege in a single paragraph that BCBSTX breached its duty of good faith and fair dealing by "failing to provide full payment on Plaintiffs' and the Class's assigned insurance claims when BCBS' liability was reasonably clear. Moreover, to the extent BCBS conducted 'investigations' to make coverage determinations, such 'investigations' were merely a pretext to deny full coverage." (Compl. ¶ 98.) Courts in this circuit have held that conclusory allegations like those here are insufficient to state a claim for breach of duty of good faith and fair dealing.

Category Two:        Plaintiffs' causes of action in the second category (Counts IV–VII) should also be dismissed under Rule 12(b)(6) because they are equally conclusory and Plaintiffs do not plausibly plead all elements for each cause of action.  For example, in Count IV for negligent misrepresentation, Plaintiffs fail to allege actual reliance on BCBSTX's alleged misrepresentations regarding coverage because all of the purported misrepresentations occurred *after* Plaintiffs had already provided the services at issue, making BCBSTX's post-service representations about coverage irrelevant to Plaintiffs' decision to provide the care that is the subject of their claim.

Count V for unjust enrichment and quantum meruit also fails because Plaintiffs do not— and cannot—plead an essential element of these claims: that Plaintiffs have conferred a benefit on BCBSTX.  When a healthcare provider furnishes medical care to a patient and then seeks reimbursement from an insurer under the patient's policy, that provider has not conferred a benefit

upon the insurer, directly or indirectly.  For that reason, Texas courts routinely dismiss quantum meruit and unjust enrichment claims under these factual circumstances.

Similarly, Plaintiffs' claim for tortious interference with prospective business relations (Count VI) fails because Plaintiffs have not sufficiently pleaded any of the elements of that cause of action.  Plaintiffs' bare-bones allegations are insufficient to plausibly plead that BCBSTX interfered with any prospective business relationship between a potential patient and any Plaintiff; Plaintiffs cannot rely on rank speculation that unknown patients may have been exposed to some vaguely described BCBSTX marketing material and therefore decided not to seek emergency care at one of Plaintiffs' facilities.

<u>Category Three</u>:        Finally, Count VII should be dismissed because the Declaratory Judgment Act does not provide a substantive cause of action.  Further, because Plaintiffs' request for declaratory judgment seeks resolution of "issues that will be resolved" in the lawsuit in connection with other substantive claims, such as whether BCBSTX underpaid with respect to some unknown universe of benefit claims, it cannot survive a motion to dismiss.  Further, even if Plaintiffs were seeking a declaratory judgment as to future rights under insurance policies, Plaintiffs themselves have no direct rights under those contracts.

To summarize, Plaintiffs' Complaint should be dismissed for the following reasons:

**<u>Category One: Counts I–III</u>**:

- Counts I–III should be dismissed for lack of subject matter jurisdiction because Plaintiffs do not establish a right to bring claims on behalf of BCBSTX's insureds.

- Counts I and II should be dismissed for failure to state a claim because Plaintifs do not identify the contracts or health plans on which they are suing for breach of contract and violation of ERISA § 1132(a)(1)(B).

- Count III should be dismissed for failure to state a claim because it is based on only conclusory allegations that BCBSTX has failed to provide full payment on insurance claims.

**Category Two: Counts IV–VII**

- Count IV should be dismissed for failure to state a claim because Plaintiffs fail to allege any reliance on BCBSTX's alleged misrepresentations about coverage for medical care since all of the purported misrepresentations occurred after Plaintiffs had already provided the services at issue.

- Count V should be dismissed for failure to state a claim because Plaintiffs fail to plead (and could not possibly plead) that Plaintiffs have conferred a benefit on BCBSTX.

- Count VII should be dismissed for failure to state a claim because Plaintiffs fail to plead that any prospective patient made a choice to not seek care at one of Plaintiffs' facilities or with a Plaintiff Physician Association based on BCBSTX's marketing materials.

**Category Three: Count VIII**

- Count VIII should be dismissed because Plaintiffs cannot base a declaratory judgment claim on issues that will be resolved in other claims, past conduct, or future conduct to which Plaintiffs have no direct rights.

## BACKGROUND

***Plaintiff Entities.***      Plaintiffs are five for-profit, privately held limited liability companies that operated three freestanding emergency centers and two physician associations that staffed those facilities.   Contrary to the picture Plaintiffs attempt to paint in the Complaint, Plaintiffs here did not serve "communities without a nearby hospital" thereby allowing patients to avoid "traveling dozens of miles to a hospital outside of their community."[2] (Compl. ¶ 12).  Piney Woods ER I, LLC operated as Excel ER Tyler until, according to media reports, sometime in the summer of 2017.[3]  Piney Woods ER I, LLC did not decide to open its facility in an underserved

---

[2] Contrary to the narrative that FEC operators often promote, "freestanding [ERs] preferentially locate in zip codes with higher rates of population growth, higher median income, higher shares of residents with private insurance, and lower shares of residents covered by Medicaid."  Vivian Ho, PhD et al., *Comparing Utilization and Costs of Care in Freestanding Emergency Departments, Hospital Emergency Departments, and Urgent Care Centers*, 70 ANNALS OF EMERGENCY MED. 846, 854 (2017).  Plaintiffs' business strategy was no different.

[3] *See* Brionna Rivers, *Effective Monday: Excel ER Tyler Closed*, KLTV (Aug. 10, 2017 9:50 am), https://www.kltv.com/story/35958762/effective-monday-excel-er-tyler-closed.  The Court may

community without access to emergency care, but rather operated just 1.5 miles from a full service acute care hospital, CHRISTUS Mother Frances, according to Google Maps.  In addition to competition with the nearby hospital emergency department, Excel ER Tyler also faced competition from several other FECs operating nearby, and cited that increased competition and declining patient volume, in addition to declining insurance reimbursement from all carriers, as reasons for closing. [4]  *Id.*

Piney Woods ER III, LLC operated as Excel ER Texarkana until approximately March of 2019.[5]  Like the Tyler facility, Piney Woods ER III did not decide to open a facility in an underserved community without access to emergency care, but rather less than two miles from a full service acute care hospital, CHRISTUS St. Michael, and competed with several other FECs also operating with a few miles of CHRISTUS and Excel ER according to Google Maps.   And, like the Tyler facility, media reports indicate that Excel ER Texarkana attributed its closure to increased competition, declining patient volume, and declining insurance reimbursements from all carriers. *Id.*

---

take judicial notice of matters of public record, such as news articles and information from Google Maps.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

[4] Plaintiffs fail to explain why their bad faith, negligent misrepresentation, and tortious interference claims relating to services rendered at Excel ER Tyler (which ceased operations in mid-2017) would not be time-barred since these claims are subject to a two-year statute of limitations.  *See Bardowell v. Mut. of Omaha Ins. Co.,* 985 F.2d 557 (5th Cir. 1993) (breach of the covenant of good faith and fair dealing subject to two-year statute of limitations)*; Shaban v. Hertz Corp.*, CV H-19-0987, 2020 WL 2544757, at *5 (S.D. Tex. May 19, 2020) (citing *Kansa Reins. Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1371 (5th Cir. 1994) (negligent misrepresentation claims are governed by two-year statute of limitations)); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146–47 (5th Cir. 2007)(noting that generally a two year statute of limitations applies to a tortious interference claim but a one-year limitations period applies if allegedly defamatory statements are the sole basis for the claim).

[5] Field Walsh, *Excel ER Closes Texarkana Location*, TXK Today (Mar. 8, 2019), https://txktoday.com/news/excel-er-closes-texarkana-location/

---

Last, America's ER Site 001, LLC operates as America's ER in Magnolia, Texas.  Like the other two FEC Plaintiffs, America's ER does not serve an underserved community without access to care. Indeed, there are four hospitals within ten miles of America's ER and two additional emergency care centers within 3 miles of America's ER.

***Plaintiffs' Rates.***        Plaintiffs are all out-of-network providers, meaning that that they did not have a contract with BCBSTX (or most other insurers it appears) that would have made them preferred or network providers in BCBSTX health plans and thereby fixed an agreed amount of reimbursement for services rendered to BCBSTX health plan members.  Similarly, because they have no contractual relationship with BCSBTX, and no federal or state law affords them any direct right to payment from health plans and insurers, Plaintiffs have only those rights, if any, expressly assigned to them by their patients on which to base their claims for reimbursement.  Accordingly, the precise scope of any assignments are foundational to the Court's subject matter jurisdiction.

Unconstrained by contract or regulation, Plaintiffs were free to, and did, set their charges at whatever level they chose.  The problems associated with the absence of constraints on out-of-network healthcare pricing and surprise billing have been the topic of extensive media coverage [6]

---

[6] Jenny Deam, *Cracking the Code: How facility procedure codes can become weapons*, Houston Chronicle (Feb. 23, 2019 5:13 pm), https://www.houstonchronicle.com/business/article/Cracking-the-Code-How-facility-procedure-codes-13635306.php; *See also* Ho et al., *Comparing Utilization and Cost of Care*, at 852–53 ("In cases in which procedure codes overlapped, the total price per visit was 13 times higher in freestanding [ERs] than  urgent care centers" and noting the possibility that freestanding ERs "have greater incentive to upgrade the disease severity of claims to a higher code to receive higher reimbursement"); Carolyn Y.  Johnson, *Free-standing ERs offer care without the wait.  But patients can still pay $6,800 to treat a cut*, Washington Post (May 7, 2017) https://www.washingtonpost.com/business/economy/free-standing-emergency-rooms-offer-costly-convenience/2017/05/07/6255d052-2b98-11e7-b605-33413c691853_story.html        (noting the CEO of several freestanding ERs in Houston opened the facility because "money just fell into your lap," and that a patient in Frisco was billed over $5,000 for five stiches to his finger).

and legislative scrutiny over the past several years. [7] *See* Deam, *supra*; Elizabeth Byrne, *Texas has more than 200 freestanding ERs.  Lawmakers just passed bills to combat patient confusion and price gouging*, Texas Tribune (June 3, 2019 12:00 AM), https://www.texastribune.org/2019/06/03/ freestanding-emergency-centers-bills-legislature/.  Even the Texas Supreme Court has observed that a fact of our healthcare system is that provider charges bear little relationship to costs or the market value of services.  *See In re N. Cypress Med. Ctr. Operating Co., Ltd*., 559 S.W.3d 128, 132–33 (Tex. 2018).

While Plaintiffs have wide discretion with respect to setting their charges, insurers in Texas are not required to use those prices as the measure of reimbursement for emergency services. In the Complaint, Plaintiffs severely misrepresent the requirements of federal and state law with respect to coverage of emergency services.  Neither requires payment of Plaintiffs' unilaterally set charges. Even if the Affordable Care Act applied to FEC services, the ACA does not require health plans to reimburse emergency services at more than the greatest of (i) 100% of what Medicare would pay, (ii) whatever the health plan's standard out-of-network reimbursement would be, or (iii) what the median payment to an in-network provider for the same services would be.  45 C.F.R. § 147.138(b)(3)(i)(B).  Plaintiffs do not plead that their prices were equal to any of those metrics. Similarly, with respect to Texas law, Plaintiffs seem to be misinterpreting the phrase "usual and customary *rate*" as a reimbursement amount based on providers' billed *charges*, rather than based upon the insurer's regular rate of payment. Texas courts have repeatedly noted the disconnect between provider charges and rates of reimbursement, particularly for out-of-network providers

---

[7] *See also* Elizabeth Byrne, *Texas has more than 200 freestanding ERs.  Lawmakers just passed bills to combat patient confusion and price gouging*, Texas Tribune (June 3, 2019 12:00 AM), https://www.texastribune.org/2019/06/03/freestanding-emergency-centers-bills-legislature/ (noting that freestanding ERs often display logos for health plans they don't accept and that research into surprise medical bills revealed a number of these bills came from freestanding ERS)

who are often incentivized to charge highly-inflated "list prices" for their services. *See In re N. Cypress Med. Ctr. Operating*, 559 S.W.3d at 132–33; *Gunn v. McCoy*, 554 S.W.3d 645, 673 (Tex. 2018) ("While hospitals may devote significant time and effort to establishing and updating their list prices, they generally establish those prices with the clear expectation that they will be paid only a portion of them."); *Haygood v. De Escabedo*, 356 S.W.3d 390, 394 (Tex. 2011) ("In all these respects, the present case is entirely typical. The providers testified the charges billed to Haygood were reasonable, even though those charges were four times the amount they were entitled to collect.").

## STATEMENT OF ISSUES

1. Does the Court lack subject-matter jurisdiction over Plaintiffs' claims for breach of contract, breach of ERISA § 1132(a), and bad faith due to Plaintiffs' failure to sufficiently plead standing to sue as alleged assignees of unidentified persons with unspecified health coverages under unidentified health plans?

2. Are Plaintiffs' causes of action for breach of contract and violation of ERISA § 1132(a)(1)(B) inadequately pleaded due to Plaintiffs' failure to identify any persons who allegedly assigned those claims to Plaintiffs or any health plans or policies allegedly breached by Defendant?

3. Do Plaintiffs fail to allege a plausible right to relief for their bad faith cause of action because of their conclusory allegations and failure to plead injury independent from their claim for plan benefits?

4. Do Plaintiffs plausibly plead a cause of action for negligent misrepresentation where they fail to allege reliance and injury proximately caused by the alleged misrepresentations?

5. Do Plaintiffs state plausible causes of action for unjust enrichment or quantum meruit where Plaintiffs rendered services only to their patients and conferred no benefit on BCBSTX?

6. Do Plaintiffs' conclusory allegations that BCBSTX interfered with unspecified prospective business relationships with unidentified potential patients state a plausible right to relief for tortious interference with prospective business relations?

7. Do Plaintiffs state a claim pursuant to the Declaratory Judgment Act for based on issues that will be resolved in other claims, past conduct, or future conduct to which Plaintiffs have no direct rights?

## STANDARD OF REVIEW

Pursuant to Article III of the Constitution, plaintiffs must establish standing to bring each cause of action they seek to assert in federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  To establish Article III standing: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision  *Id.*  Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim if the Court lacks subject-matter jurisdiction. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the jurisdictional attack before addressing any attack on the  merits."  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

To survive a Rule 12(b)(6) motion, Plaintiffs' factual allegations must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Mere legal conclusions or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, the complaint must contain "***factual content*** [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id*. at 678 (emphasis added), citing *Twombly*, 550 U.S. at 556, and to give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest. Fed. R. Civ. P. 8(a).  Failure to satisfy this standard is grounds for dismissal.

Finally, a Court should grant a motion for a more definite statement pursuant to Rule 12(e) "'[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice'" according to Rule 8. *Diaz v. Kettley Trucking, Inc*., 1:20-CV-51, 2020 WL 1666166, at *1 (E.D.

Tex. Apr. 2, 2020) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).  It is within the Court's discretion whether to grant a Rule 12(e) motion.  *Id.*

## ARGUMENT

I. **COUNTS I, II, AND III: CAUSES OF ACTION PLAINTIFFS PURPORT TO BRING AS ASSIGNEES.**

   A. **The Court Lacks Subject-Matter Jurisdiction Over Claims Plaintiffs Purport to Bring Based on Alleged Assignments Made by Unidentified Assignors.**

Counts I, II, and III purport to state causes of action for breach of contract, violation of ERISA § 1132(a)(1)(B), and bad faith.  Plaintiffs do not seek to vindicate their own contractual or ERISA rights, but rather invoke the Court's jurisdiction based on the bald assertion that some unknown number of unidentified persons executed written assignments sufficient to assign their rights under unidentified contracts and ERISA-governed health benefit plans to Plaintiffs.  (*See* Compl. ¶¶ 81, 92, 98)  Of course, the Complaint provides zero facts concerning the scope and content of these alleged assignments on which the Court could possibly determine whether Plaintiffs have plausibly established standing to bring suit as strangers to those contracts and ERISA plans. Plaintiffs' entire Complaint is based on conclusory allegations and rests on the theory that: (1) certain unidentified individuals visited their facilities, (2) Plaintiffs rendered care to those unidentified patients, and (3) those unidentified patients assigned their rights to Plaintiffs for alleged benefits that exist under the unidentified patients' unidentified health plans—some of which are funded by entities other than BCBSTX and some of which are governed by ERISA. (*See, e.g.*, Compl. ¶¶ 91–94). This type of rank speculation is not sufficient to satisfy Article III.

Plaintiffs fail to identify anything about the claims for reimbursement that they are purporting to sue on.  Plaintiffs do not identify how many assignors there are or how many claims they are suing for, who the assignors are, or how and to what degree these assignors allegedly

assigned their rights to Plaintiffs to enable Plaintiffs to bring these claims. Plaintiffs merely allege that they "have treated tens of thousands of BCBS members, and accordingly billed BCBS for services provided to the BCBS members." (Compl. ¶ 37.)  However, there is no indication whether Plaintiffs are suing BCBSTX based on alleged violations of five or five thousand independent contracts or ERISA plans.[8]  Likewise, Plaintiffs offer only the generic and conclusory statements that the "FECs are the assignees of health care benefits to which BCBS members are entitled under ERISA plans" (Compl. ¶ 89) and "BCBS members assigned their benefits under these plans and/or insurance contracts to the Plaintiffs and the Class." (*Id.* ¶ 91.)  Plaintiffs did not attach or quote from a single assignment in their Complaint to provide a factual predicate that the assignments have the legal effect that Plaintiffs ask the Court to assume.

The Complaint as drafted tells the Court and BCBSTX nothing—no notice whatsoever— about whose rights are at issue, under which contracts or health plans, let alone why it is that Plaintiffs—not the ERISA plan beneficiaries or policyholders themselves—have the right to come to Court to enforce those instruments.  Accordingly, Counts I, II, and III should be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1).  *See* FRCP 12(b)(1); *Lujan*, 504 U.S. at 560.  Moreover, it is black letter that as the parties invoking the Court's subject-matter jurisdiction as to Count I, claims for benefits under ERISA health plans, Plaintiffs have the burden to establish the existence of an ERISA plan in the first instance.  *See Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir. 1990) (holding that establishing the existence of a plan within the contemplation of ERISA is a jurisdictional inquiry).  Plaintiffs have not identified any ERISA

---

[8] With respect to those claims for benefits that Plaintiffs assert in Count I pursuant to ERISA 1132(a)(1)(B), importantly those claims are determined by the Court, not a jury, based on the individual administrative record for each claim and therefore without facts in the Complaint to identify the claims at issue, the Court cannot determine which administrative records (or how many) it must address. *Borst v. Chevron Corp.*, 36 F.3d 1308, 1325 (5th Cir. 1994).

plans and for this additional reason Count I should be dismissed for lack of subject-matter jurisdiction for failure to establish the existence of an ERISA plan.

B.   **Counts I and II: The Complaint Fails to State a Claim for Breach of Contract or Breach of ERISA § 1132(a)(1)(B) because Plaintiffs Fail to Identify the Claims or Plans at Issue.**

Count I purports to state a claim based on BCBSTX's alleged failure to reimburse Plaintiffs at the rates mandated by the express terms of an unknown number of ERISA-governed "welfare benefit plans." (Compl. ¶¶ 79–89.) Similarly, Count II (*id.* ¶¶ 90–95) seeks damages for breach of contract under Texas state law, premised on the same theory as Count I.[9] However, in addition to failing to identify the insurance claims Plaintiffs are seeking to litigate, Plaintiffs also fail to adequately allege the health benefit plans or contracts that they seek payments under, giving the Court no basis upon which to conclude Plaintiffs' claims are plausible. Each instance of alleged under-payment requires the Court to consider a unique episode of care rendered to an individual patient, the claim submitted on behalf of that patient for that care, the terms of the patient's health plan or insurance policy, and the decision rendered on the claim. However, the Complaint does not identify ***any*** claims, or even any insurance contracts or ERISA plans, giving the Plaintiffs no plausible cause of action based in contract or under ERISA.

1.   **Plaintiffs Have Not Pleaded the Identity of the Claims at Issue.**

The Court should dismiss Counts I and II for the fundamental reason that the Complaint fails to identify any claims for reimbursement under any contracts or ERISA plans, let alone the

---

[9] Count II of the Complaint states the breach of contract claims is "(As to Both Self-Funded and Non Self-Funded ERISA Plan Claims)." (Compl. at 25.) However, Plaintiffs go on to assert that they provided services to members under insurance contracts "that are not covered by ERISA." (*Id.* ¶ 91.) To the extent Plaintiffs attempt to assert a breach of contract claim as to ERISA-governed plans, including insured plans, such a claim is preempted by ERISA. *See Mem'l Hosp. Sys.*, 904 F.2d at 250 olding state law breach of contract claim related to claim for benefits under an ERISA plan was preempted by ERISA).

plan provisions allegedly giving rise to their claims.  In their Complaint, Plaintiffs provide just two snippets of alleged reimbursement provisions from unidentified BCBSTX insurance plans: one from an alleged BCBSTX PPO plan and one from an alleged BCBSTX HMO plan.  (Compl. ¶¶ 30-31.) But, critically, Plaintiffs do not allege that these two plans are the same as those that they are suing under – because they don't identify any of the insurance policies that they base their claims on.  Similarly, the Complaint does not purport to contain even allegedly representative plan language from any ERISA self-funded plans on which Count I is based.[10]

Plaintiffs' decision to include these excerpts in the Complaint is an apparent nod to the Fifth Circuit's 2018 decision in *Innova*, which allowed a case against several insurance companies to proceed based in part on the complaint's quotation of two plan provisions alleged to be representative of 863 identified claims.  892 F.3d at 726–32.  But even under a liberal reading of the *Innova* decision, Plaintiffs have failed to plead adequate facts regarding the identification of claims and the plans or policies at issue because *Innova* did not upend the Rule 8(a) pleading standard.

The Fifth Circuit in *Innova* held that "[a]lleging improper reimbursement based on representative plan provisions . . . may be sufficient to show plausibility under *Twombly* and *Iqbal* **when there are enough other factual allegations in the complaint to allow a court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged**.'" *Innova*, 892 F.3d at 729 (emphasis added).  Not surprisingly, courts routinely hold that breach of contract claims (where not preempted by ERISA) seeking payment of healthcare benefits have the same pleading requirement.  *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga. Inc.*, 995 F.

---

[10] In Count I Plaintiffs refer back to their earlier alleged PPO and HMO insurance policy language but provide no factual allegations to explain why the ERISA self-funded plans are identical to BCBSTX's insured products.

Supp. 2d 587, 600 (N.D. Tex. 2014); *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, No. CV H-11-2745, 2017 WL 1710567, at *8 (S.D. Tex. May 3, 2017) (holding that a complaint "must make plausible allegations about who assigned rights under what insurance policy and identify what policy terms Blue Cross breached and how"); *Baker v. Greater N. Energy Inc.*, No. 3:14-CV-0240-B, 2016 WL 2914757, at *6 (N.D. Tex. May 18, 2016) (dismissing contract counterclaim on similar basis).  Unlike *Innova*, where the plaintiffs in that case relied on two plan provisions that were allegedly representative of the ***863 claims under health plans and policies actually identified in the complaint***, here Plaintiffs do not identify any claims for which they are seeking recovery. *See Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 734 (5th Cir. 2015) (explaining "the first amended complaint did not identify the claims" and that "the district court dismissed the first amended complaint . . . ordering Electrostim to file a second amended complaint that clarified the source and nature of the claims and that the causes of action were.").

Innova has been further clarified by district courts in later cases that have held conclusory assertions about covered services are insufficient to state a plausible claim for plan benefits under ERISA. *See Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*, No. 5-16-CV-01094-FB-RBF, 2018 WL 4211741, at *5 (W.D. Tex. Sept. 4, 2018); *see also UnitedHealthcare Servs., Inc. v. Next Health, LLC*, No. 3:17-CV-0243-S, 2018 WL 3520429, at *7 (N.D. Tex. July 20, 2018) (ordering the provider defendants-counterclaimants to "provide representative plan terms" to plead a claim for plan benefits).  In *Sky*, the Court clarified that although "plaintiffs . . . need not necessarily identify the specific language of every plan provision" that they must still plead "representative plan provisions" and that in *Innova* "there were 'enough other factual allegations in the complaint to allow a court to draw the reasonable inference that the defendant was liable for the misconduct alleged.'" *Id.* (internal citations omitted). Without identifying the claims Plaintiffs are seeking to

recover on, Plaintiffs failed to plausibly plead claims for violation of section 1132(a)(1)(B) of ERISA and breach of contract, and the Court should dismiss Counts I and II.

      C.    **Count III: The Complaint Fails to State a Claim for Bad Faith Because There is No Special Relationship Between Plaintiffs and BCBSTX and Plaintiffs' Allegations are Conclusory.**

In addition, the Court should dismiss Plaintiffs' bad faith claim for failure to state a claim. Plaintiffs assert BCBSTX is liable for breach of duty of good faith and fair dealing as to unidentified claims for reimbursement made under BCBSTX insurance policies. (Compl. ¶¶ 96–99.) A breach of duty of good faith and fair dealing is an extra-contractual tort based in state common law. Texas law recognizes a cause of action for damages for a breach of the common law duty of good faith and fair dealing in limited circumstances of special relationships, such as the relationship between insurers and insureds. *See Old Am. Ins. Co. v. Lincoln Factoring, LLC*, No. 2015-005979, 2018 WL 5832111, at *4 (Tex. App.—Fort Worth Nov. 8, 2018, no pet.). Plaintiffs are FECs and physician associations—not BCBSTX insureds. And, as explained *supra*, Plaintiffs fail to plead standing to sue as assignees. Thus, ***Plaintiffs have identified no special relationship between themselves and BCBS*** that could support a bad faith claim.

Even if Plaintiffs did have Article III standing with respect to this cause of action, they fail to state a claim because Count III is devoid of any factual allegations necessary to give rise to a plausible entitlement to relief. A claim for breach of duty of good faith and fair dealing against an insurer requires "(1) the absence of a reasonable basis for denying payment; and (2) [that] the insurer knew or should have known that no reasonable basis existed for not making payment." *Almanza v. Transcon. Ins. Co.*, No. 05-95-00960-CV, 1996 WL 429303, at *4 (Tex. App.—Dallas July 23, 1996, no pet.). Plaintiffs have not adequately alleged either element. Rather than substantiate their tort claim with factual allegations about particular supposed violations by

BCBSTX, Plaintiffs merely allege in a single paragraph that BCBSTX breached its duty of good faith and fair dealing by "failing to provide full payment on Plaintiffs' and the Class's assigned insurance claims when BCBS' liability was reasonably clear." (Compl. ¶ 98.)  Courts in this circuit have held that conclusory allegations like these are insufficient to state a claim for breach of duty of good faith and fair dealing.  *E.g.*, *Radenbaugh v. State Farm Lloyds*, No. 4:13-CV-399-A, 2013 WL 4442024, at *6 (N.D. Tex. Aug. 16, 2013) ("A basic shortcoming of plaintiff's breach of duty of good faith and fair dealing claim is that no facts are alleged in support of [its] conclusory statement[s] . . . ."); *SHS Inv. v. Nationwide Mut. Ins. Co.*, 798 F. Supp. 2d 811, 818–21 (S.D. Tex. 2011) (same).

Second, this Count also fails because Plaintiffs have not pleaded that they suffered any injury that is independent from their claim for insurance benefits.  The Supreme Court of Texas recently clarified its controlling precedent that "if an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the insured a right to benefits," but "***only if the damages are truly independent of the insured's right to receive policy benefits***." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499–500 (Tex. 2018) (emphasis added).  *Menchaca* confirms the independent-injury requirement for a common law claim for the breach of the duty of good faith and fair dealing. *Turner v. Peerless Indemn. Ins. Co.*, No. 07-17-00279-CV, 2018 WL 2709489, at *4-5 (Tex. App.—Amarillo June 5, 2018, no pet.) (holding that "[t]he independent injury rule is alive and well, as reiterated by the Texas Supreme Court in its recent *Menchaca* opinion," and finding that plaintiff could not recover "the amount of benefits the insured loses out on as a result" of extra-contractual claims because that alleged injury was not "independent of what he claims he lost 'out on' under the policy").

Here, Plaintiffs have asserted they have a tort claim because "BCBS breached its duty by failing to provide full payment on Plaintiffs' and the Class' assigned insurance claims." (Compl. ¶ 98.) This is, of course, the same injury as that alleged in Plaintiffs' breach of contract count, (*id.* ¶ 94), so they have not alleged an independent injury that can support a common law claim.

D.   **In the Alternative, Plaintiffs Should be Required to File a More Definite Statement to Identify the Claims, Health Plans, and Purported Assignments at Issue.**

Alternatively, BCBSTX moves pursuant to Rule 12(e) and asks the Court to order Plaintiffs to file a more definite statement, identifying the claims, contracts, and health plans allegedly at issue and describing which plan terms they rely on for each cause of action.  Further, Plaintiffs should also identify the content of the assignments (and the identity of the assignors) that purportedly transferred rights to Plaintiffs to assert Counts I-III.  *See Next Health*, 2018 WL 3520429, at *7 (granting Rule 12(e) motion and requiring providers to re-plead with more information regarding representative plan terms); *Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 775 (S.D. Tex. 2014) (ruling on the defendant's motion to dismiss for lack of standing only after the plaintiff provided the Court with exemplars of the assignments alleged in the plaintiff's complaint).

The Court in *Next Health* held that the provider asserting reimbursement claims based on health benefit plans must "identify the member who assigned their benefits and the plan and policy number under which such benefits arose."  2018 WL 3520429, at *7.  Similarly, the Court in *Mid-Town* "ordered the parties to produce exemplars of each 'Assignment of Benefits' that [plaintiff] alleges transfers to it" the benefits it claims.  16 F. Supp. 3d at 775.  Here, absent the assignments that Plaintiffs allege give them standing, the Court has no way to determine whether the Court has subject-matter jurisdiction over Counts I-III.

II.      **COUNTS IV, V, AND VI:   THE COMPLAINT FAILS TO STATE CLAIMS FOR RELIEF FOR THE CAUSES OF ACTION PLAINTIFFS ASSERT ON THEIR OWN BEHALF.**

     A.      **Count IV:  The Complaint Fails to State a Claim For Negligent Misrepresentation Because Plaintiffs Do Not Plead Reliance on Alleged Misrepresentations.**

The Court should dismiss Plaintiffs' negligent misrepresentation claim because Plaintiffs fail to plead facts to satisfy necessary elements of that claim: harm from reliance on alleged misrepresentations.  To plead a valid negligent misrepresentation claim, Plaintiffs must establish that:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation.

*Bracken v. Wells Fargo Bank, N.A.,* 13 F. Supp. 3d 673, 685 (E.D. Tex. 2014), *aff'd*, 612 F. App'x 248 (5th Cir. 2015).  Importantly, to be actionable the misrepresentation must concern existing facts, not future conduct.  *Bracken*, 13 F. Supp. 3d at 685.  And to show justifiable reliance, "there must be a reasonable relation between the contents of the defendant's misrepresentations and the action the plaintiff took in reliance." *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc*., 88 F.3d 347, 358 (5th Cir. 1996) (quoting *Geosearch, Inc. v. Howell Petroleum Corp*., 819 F.2d 521, 526 (5th Cir. 1987)).

Plaintiffs plead generically that they relied on BCBSTX's alleged misrepresentations "in attempting to determine coverage information" but their own barebones allegations negate any justifiable reliance.[11]  (*See* Compl. ¶ 104).  Although they provide no specific examples, Plaintiffs'

---

[11] Plaintiffs' negligent misrepresentation claim is premised on allegedly fraudulent statements, thus making their claim subject to Rule 9(b)'s heightened pleading standard.  *See SHS Inv.*, 798 F.

argument appears to be that, allegedly, after some unidentified BCBSTX-insured patients received care at one of Plaintiffs' facilities and then submitted a claim for reimbursement, BCBSTX would sometimes deny coverage for that claim, and the reasons it denied coverage allegedly were false. (*Id.*¶¶ 101–105).  Plaintiffs fail to plead justifiable reliance because the unidentified but allegedly false statements were made ***after*** Plaintiffs rendered services to the patient whose claim BCBSTX supposedly denied with a purportedly false explanation.  Thus, because Plaintiffs could not have relied on BCBSTX's statements concerning coverage in deciding whether to render services to the patient at issue, there can be no "reasonable relation between the contents of the defendant's misrepresentations and the action the plaintiff took in reliance."  *Clardy Mfg. Co*., 88 F.3d at 358.  It is axiomatic that detrimental reliance must follow the alleged misrepresentation, not precede it.

Indeed, Plaintiffs proclaim throughout their Complaint that they are supposedly required by Texas law to "treat all patients regardless of their insurance coverage or ability to pay."  (Compl. ¶ 18); *see* 25 TEX. ADMIN CODE § 131.46 ("A facility shall provide to each patient, ***without regard to the individual's ability to pay***, an appropriate medical screening, examination, and stabilization within the facility's capability, including ancillary services routinely available to the facility, to determine whether an emergency medical condition exists and shall provide any necessary stabilizing treatment") (emphasis added); TEX. HEALTH & SAFETY CODE § 254.153.[12]   Thus,

---

Supp. 2d at 815 (noting that Rule 9(b) applies "to all averments of fraud, whether they are part of a claim of fraud or not").  Under Rule 9(b), Plaintiffs must state with particularity "the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Id.* at 814 (quoting *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206–07 (5th Cir. 2009)).  Thus, Plaintiffs' negligent misrepresentation claim should be dismissed for failure to comply with Rule 9(b).

[12] Plaintiffs also claim that the Federal Emergency Medical Treatment and Labor Act requires them to administer care.  (*Id.*¶ 19).  Not true.  EMTALA requires emergency departments *within hospitals* to provide emergency facility services.  42 U.S.C. § 300gg-19a(b)(1) ("[P]rovides or covers any benefits with respect to services ***in an emergency department of a hospital*** . . . .")

Plaintiffs own Complaint allegations foreclose any possibility of a cognizable negligent misrepresentation cause of action.  Thus, the Court should dismiss Count IV with prejudice.

B.    **Count V: The Complaint Fails to State a Claim for Unjust Enrichment or Quantum Meruit Because Plaintiffs Did Not Confer a Benefit on BCBSTX.**

Under Texas law, both unjust enrichment and quantum meruit theories of recovery are unavailable because Plaintiffs' provision of medical services to an insured did not confer a benefit on BCBSTX, an insurer.  The Court should therefore dismiss Count V with prejudice.

Under the equitable theories of quantum meruit and unjust enrichment, a defendant may be liable to a plaintiff if and only if that plaintiff confers a benefit *on that defendant*.  *Fustok v. UnitedHealth Grp., Inc.*, No. 12-cv-787, 2013 WL 12188582, at *3 (S.D. Tex. Jan. 18, 2013) ("[T]o recover in quantum meruit, the plaintiff must show that his efforts were undertaken for the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant.") (quoting *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988)); *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) (same dismissing unjust enrichment claim).

It is well-recognized that when a healthcare provider furnishes care to an insured patient and then seeks reimbursement from an insurer by making a claim under that patient's healthcare policy, that provider does not confer a benefit upon the insurer.  For that reason, Texas courts routinely dismiss quantum meruit and unjust enrichment claims when asserted by a healthcare

---

(emphasis added).  Plaintiffs are not hospitals, or hospital emergency departments.  *See* Excel ER, FAQ "a freestanding emergency room . . . is not directly connected to a hospital"), http://excel24er.com/about.  EMTALA does not apply to the physician association Plaintiffs or the freestanding ER Plaintiffs.  *See Emerus Hosp. v. Health Care Serv. Corp.*, 13 C 8906, 2016 WL 946916, at *4 (N.D. Ill. Mar. 14, 2016) ("[P]rivate causes of action under EMTALA are limited to suits against hospitals."); (*Gerber v. Nw. Hosp. Ctr., Inc.*, 943 F. Supp. 571, 575 (D. Md. 1996) (finding no cause of action against physician groups in EMTALA); *Reynolds v. Mercy Hosp.*, 861 F. Supp. 214, 220–21 (W.D.N.Y. 1994) (same).

provider against an insurer based on services rendered to an insured.  *See Mission Toxicology, L.L.C. v. UnitedHealthcare Ins. Co.*, 5:17-CV-1016-DAE, 2018 WL 2222854, at *8 (W.D. Tex. Apr. 20, 2018) ("The services were provided to United's insureds . . . thus; United is not a party in the equation."); *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355, 2016 WL 7177881, at *12 (S.D. Tex. Dec. 8, 2016) ("Unjust enrichment and quantum meruit claims fail because they seek disgorgement based on healthcare services provided to patients.  Plaintiffs cannot recover under these causes of action from [defendant], because plaintiffs did not provide healthcare services to [defendant]."); *Tex. Spine & Joint Hosp., Ltd. v. Blue Cross & Blue Shield of Tex., a Div. of Health Care Serv. Corp.*, No. 6:14-CV-952-JDL, 2015 WL 13649419, at *7 (E.D. Tex. May 28, 2015) (recommending quantum meruit claim be dismissed against Blue Cross Blue Shield because "Plaintiff did not furnish services directly upon" Blue Cross Blue Shield); *Encompass*, 775 F. Supp. 2d at 966 (granting motion to dismiss quantum meruit claim: "Even if United received some benefit as a result of Encompass providing medical services to its insureds, a proposition the court finds dubious, Encompass's services were rendered to and for its patients, not United."); *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 962 F. Supp. 2d 887, 898 (S.D. Tex. 2013), *rev'd in part on other grounds*, 614 F. Appx. 731 (5th Cir. 2015) ("It is counterintuitive to say that services provided to an insured are also provided to its insurer.  The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured-which hardly can be called a benefit."); *see also Mission Toxicology*, 2018 WL 2222854, at *8 (same).

Here, Plaintiffs allege that "BCBS has wrongfully secured benefits that would be unconscionable for it to retain by repeatedly and systematically underpaying FECs, including Plaintiffs and the Class, for the treatment that they provided to BCBS subscribers." (Compl. ¶ 107.)

An obligation to make a payment under an insurance policy is not a "benefit" to BCBSTX. Conclusory allegations that BCBSTX benefited from Plaintiffs' provision of care to patients does not make this claim plausible.  As a matter of law, the provider-insurer relationship that Plaintiffs allege cannot support a claim for unjust enrichment or quantum meruit.  Accordingly, Count V should be dismissed with prejudice.[13]

C.   **Count VI: The Complaint Fails to State a Claim For Tortious Interference With Prospective Business Relations Because Plaintiffs Do Not And Cannot Plead a Reasonable Probability of a Contractual Relationship with Potential Patients**.

Plaintiffs' argument that BCBSTX has interfered with its prospective business relationships by dissuading potential patients from visiting its facilities fails to plead any of the elements of a tortious interference claim.  (*See* Compl. ¶¶ 112–117).  To state a claim for tortious interference with prospective business relations, a plaintiff must plead:

> (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did the act with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the interference.

*Marathon Fin. Ins. Co., Inc., RRG v. Ford Motor Co*., 5:05-CV-16-DF, 2006 WL 8441917, at *11 (E.D. Tex. Mar. 28, 2006).  The Complaint does not plead any facts to support these elements, let alone sufficient facts to establish a plausible right to relief.  The Complaint does not plead facts

---

[13] Plaintiffs' unjust enrichment claim should also be dismissed because Texas does not recognize an independent cause of action for unjust enrichment.  *Harris Cty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 561 (5th Cir. 2015) ("Texas courts recognize that unjust enrichment is not an independent claim; rather it is a theory of recovery . . . ." (internal citation and quotation marks omitted)).  BCBSTX recognizes that some courts in the Eastern District of Texas have made an Erie determination to the contrary.  *See PharMerica Corp. v. Advanced HCS LLC*, No. 2:17-CV-180-JRG, 2017 WL 7732174, at *5 (E.D. Tex. July 13, 2017) (making an "Erie guess" and concluding "that it is appropriate to view unjust enrichment as a separate cause of action under Texas law").  BCBSTX thus makes this argument to preserve the issue.

identifying any party that would have entered into a contractual relationship with Plaintiffs, let alone facts to demonstrate that such a relationship was reasonably probable.  Not surprisingly then the Complaint contains no facts to establish that BCBSTX knew of the impending contractual relationship between any Plaintiff and the unidentified third-parties, let alone that BCBSTX had any contact with the third-parties that was tortious and interfered with the hypothetical contractual relationship Plaintiffs would have formed with the unknown third-parties.

Here, Plaintiffs plead only that by engaging in an unspecified "marketing plan" that supposedly misrepresents a patient's financial responsibility for services at a freestanding ER (not any Plaintiff specifically), BCBSTX has "diverted prospective clients from Plaintiffs."  (Compl. ¶ 112.).  A claim for tortious interference with prospective business relations cannot stand on rank speculation that perhaps an unidentified consumer suffering a medical emergency would have visited one of Plaintiffs' facilities for treatment save for her exposure to unidentified BCBSTX marketing materials stating that in general, that patients visiting freestanding ERs have greater out-of-pocket financial responsibility for services under their health plans.[14]

Plaintiffs' allegations are insufficient to plead that BCBSTX has interfered with any reasonably probable prospective business relationship between a patient and any Plaintiff.  First, Plaintiffs have alleged only that unknown "prospective" or "potential" clients or patients would have visited Plaintiffs' facilities but for BCBSTX's conduct. (Compl. ¶¶ 112, 115–16).  Plaintiffs'

---

[14] Plaintiffs also fail to plead why such vague statements are false or solely attributable to BCBSTX.  Indeed, two of the largest state-funded healthcare plans in Texas—The Teacher Retirement System of Texas and the Texas Employee Retirement System—likewise publicly cautioned their healthcare beneficiaries about the financial risk of visiting a freestanding ER rather than a full-service hospital-affiliated emergency room.  *See* Teacher Retirement System of Texas, *Where to Get Care: Avoid the High Costs of Freestanding ERs* (May 2019), https://www.trs.texas.gov/Pages/healthcare_news_201905_avoid_highcost_er.aspx; ERS, "Higher HealthSelect costs for out-of-network freestanding ERs, https://ers.texas.gov/HealthSelect-freestanding-ERs.

conclusory and generic allegations fail to identify any particular individual who decided not to visit a Plaintiff facility because of BCBSTX's materials.  *Green Beret Found. v. Paquette*, SA-18-CV-1044-XR, 2019 WL 6048021, at *7 (W.D. Tex. Aug. 20, 2019) ("[T]he claimant must identify clients with which it would have done business but for the defendant's conduct.").   Such speculation cannot support a claim for tortious interference.  *See Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Green Beret Found.,* 2019 WL 6048021, at *8 (granting motion to dismiss tortious interference claim in part because plaintiff's allegations that defendant had "contacted persons in her 'network'" was insufficient to identify persons with whom she could have had a business relationship).

Second, even if Plaintiffs had identified specific patients, the Complaint alleges that patients who happen to receive treatment at one of Plaintiffs' facilities typically do not decide whether to enter into a contractual relationship with a particular Plaintiff, as opposed to other potential care providers.   Indeed, Plaintiffs themselves plead that "patients often cannot choose their provider in an emergency situation.  Patients can be unconscious or otherwise incapacitated in an emergency, and in most cases, transported to the nearest emergency facility without regard to the facility's network status."  (Compl. ¶ 17).  Plaintiffs do not allege that any individual, in the face of an emergency medical situation, made a conscious choice to avoid any Plaintiff facility because of BCBSTX's unspecified marketing material and in fact, Plaintiffs' pleadings contradict any suggestion that patients in this circumstance made any choice at all about where they received care.  *See Green Beret Found.*, 2019 WL 6048021, at *8 (concluding plaintiff had failed to plead alleged defamatory communications "actually caused her to lose any prospective relationship"). Numerous courts in the Fifth Circuit have dismissed similarly speculative pleadings.  *See*, *e.g.*, *Id.; I Love Omni, LLC v. Omnitrition Int'l, Inc.*, 3:16-CV-2410-G, 2017 WL 3086035, at *3 (N.D. Tex.

July 20, 2017) (no reasonable probability of interference where Plaintiffs pleaded only that disparaging remarks made on a phone call with defendant interfered with a potential business relationship "given Plaintiffs close relationship with individuals on the call"); *Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep-Downers Grove, LLC*, 3:16-CV-3310-B, 2017 WL 2729998, at *9 (N.D. Tex. June 26, 2017) (no reasonable probability of interference because Plaintiffs pleadings were based only on speculation that communications with existing customers interfered with business relations with prospective customers); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 776 (S.D. Tex. 2010) (determining that allegations that Plaintiff had previously provided tools to a defendant and expected to do so for future projects was insufficient to plead a reasonable probability the parties would  have entered into another contractual relationship).

Plaintiffs' pleadings regarding the remaining elements of a tortious interference claim fare no better.  Regarding the second element of a tortious interference claim, Plaintiffs do not identify an "independently tortious or unlawful act."  *Marathon Fin. Ins.*, 2006 WL 8441917, at *11; *see, e.g, I Love Omni*, 2017 WL 3086035, at *4 (dismissing claim in part because there was "no mention of any independent tort"); *Santander Consumer USA*, 2017 WL 2729998, at *10 ("[Plaintiff] . . . neither references a specific tort nor lists any elements of a relevant tort").

Plaintiffs allegations under the second element fail for the additional reason that Plaintiffs do not plead that BCBSTX's alleged wrongful or tortious conduct "prevented a relationship from occurring"; Plaintiffs never plead any of BCBSTX's conduct was directed at Plaintiffs.  Plaintiffs do not allege that BCBSTX's unidentified marketing materials dissuade consumers from visiting Plaintiffs' facilities or even mention Plaintiffs' facilities.  Plaintiffs allege only that "[t]hrough memorandums and in healthcare enrollment meetings, BCBSTX and its agents purposefully misrepresent the amount an insured will be charged if they choose to visit [free-standing

emergency centers].”  (Compl. ¶ 112).  This kind of vague allegation—with no plausible causal

connection to any purported damages—is insufficient to satisfy Plaintiffs' pleading requirements.

Plaintiffs' allegations concerning the last two elements are equally speculative.  To meet

their obligation to plead that BCBSTX intended to prevent a prospective business relationship and

that Plaintiffs suffered damages as a result of the interference, Plaintiffs plead only that BCBSTX

“knew their actions would, or were substantially certain to, divert patients away from Plaintiffs,”

and that this diversion has “caused them damages.”  (Compl. ¶¶ 115, 117).  These speculative and

conclusory statements are insufficient to plead facts that give rise to a plausible claim for tortious

interference and Count VI should be dismissed.  *Santander Consumer USA*, 2017 WL 2729998,

at *11 (dismissing claim in part because plaintiff had made only a conclusory statement about its

damages); *BHL Boresight, Inc. v. Geo-Steering Sols., Inc*., 4:15-CV-00627, 2016 WL 8648927, at

*12 (S.D. Tex. Mar. 29, 2016) (same).

III.     **COUNT VII: THE COMPLAINT FAILS TO STATE A CLAIM FOR
         DECLARATORY JUDGMENT BECAUSE PLAINTIFFS' CLAIM IS BASED ON
         UNIDENTIFED CONTRACTS, PAST CONDUCT, AND SEEKS RESOLUTION
         OF ISSUES RESOLVED IN OTHER CLAIMS.**

Plaintiffs' final cause of action is for a declaratory judgment “determining its rights to

reimbursement for services rendered to BCBSTX' insureds at the usual and customary rate and in

proper accordance with the above-mentioned statutes.” (Compl. ¶ 125.) But this “count”

misunderstands entirely the function of declaratory judgments and must be dismissed.

The federal Declaratory Judgment Act is remedial only and “does not create any

substantive rights or causes of action.” *Sims v. RoundPoint Mortg. Servicing Corp.*, No.

6:16CV1349, 2018 WL 1308967, at *10 (E.D. Tex. Feb. 13, 2018), *aff'd*, 760 F. App'x 306 (5th

Cir. 2019); *see also Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746,

752 n.3 (5th Cir. 1996) (construing the request for declaratory judgment “as a theory of recovery

predicated upon the cause of action for breach of contract").  And to the extent Plaintiffs' request for declaratory judgment seeks resolution of "issues that will be resolved" in the lawsuit in connection with other substantive claims, such as whether BCBSTX underpaid with respect to the benefit claims at issue, it cannot survive a motion to dismiss.  *Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*, No. 4:13-CV-2011, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014) ("Courts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit.").

Here, Plaintiffs' declaratory judgment claim concerns whether BCBSTX underpaid Plaintiffs for some unspecified universe of claims.[15]  (*See* Compl. ¶ 125 ("Plaintiffs and the Class seeks a declaratory judgment from this Court determining its rights to reimbursement for services rendered to BCBS' insured at the usual and customary rate. . . . .").)  But these issues will be resolved as part of other claims in the lawsuit, either on the pleadings or on the merits.  A separate declaratory judgment action would therefore be redundant.  *See Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016) (holding a declaratory judgment claim redundant of breach of other claims in the suit has no "useful purpose").

Plaintiffs' request for declaratory judgment is also improper because such relief must relate to *future* conduct, not *past* conduct.  *Haggard v. Bank of the Ozarks, Inc.*, 547 F. App'x 616, 620 (5th Cir. 2013) ("A claim for declaratory judgment seeks to define the legal rights and obligations of the parties in anticipation of some future conduct, not to proclaim liability for a past act.");

---

[15]  Moreover, Plaintiffs seek declaratory relief to enforce their rights under the Texas Administrative Code § 3.3701.  However, section 3.701(d) expressly states "these sections do not provide a private cause of action for damages . . . or provides a basis for a private cause of action." Tex. Admin. Code § 3.3701(d); *see Ears & Hearing, P.A. v. Blue Cross & Blue Shield of Tex.*, No. 1:18-CV-00726-LY, 2019 WL 3557349, at *8 (W.D. Tex. Aug. 5, 2019) (dismissing claims under Texas Administrative Code because there is no private right of action).

*Bauer v. Tex.*, 341 F.3d 352, 358 (5th Cir. 2003) (similar).  Here, one of Plaintiffs' requests for declaratory relief explicitly seeks "a declaratory judgment that damages, in an amount to be determined at a trial on the merits, is owed in addition to costs and attorneys' fees."  (Compl. ¶ 125.)  This is clearly an improper request for a declaratory judgment for past conduct.  Plaintiffs frame their other request as seeking future relief to determine "BCBS' reimbursement requirements," *(id.)* but the facts alleged in the Complaint refer exclusively to prior acts.  *Bauer*, 341 F.3d at 358 ("In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff ***must allege facts*** from which it appears there is a substantial likelihood that he will suffer injury in the future.") (emphasis added); *David O. Kemp, P.C. v. Nationwide Agribusiness Ins. Co.*, No. 3:11-CV-1745-N, 2012 WL 13019688, at *3 n.2 (N.D. Tex. June 12, 2012) (same).

Even if Plaintiffs were seeking a declaratory judgment as to future conduct, Plaintiffs have no direct rights under the purported and unidentified contracts that form the bases of their claims for reimbursement.  Plaintiffs' request for declaratory relief rests on the Court construing unidentified contracts to which Plaintiffs are not parties.  This is nonsensical.  Not only have Plaintiffs failed to plead that they have the right to bring claims for any alleged past breaches as proper assignees, *see supra* Part I, Plaintiffs certainly have not pleaded that they have the right to seek benefits in the future under unidentified contracts for which unidentified individuals might in the future assign their rights.  Indeed, Plaintiff do and cannot plead that they have any present rights under those future contracts, let alone what those future insurance policies might say because they have not been issued yet.  Thus, Plaintiffs' claim for declaratory relief should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, BCBSTX respectfully requests that this Court dismiss all counts within Plaintiffs' Complaint and requests that Counts V and VII be dismissed with prejudice. BCBSTX further respectfully requests any other relief to which it is justly entitled.

Dated: July 21, 2020

Respectfully Submitted,

BY: */s/ Paige H. Montgomery*_____
Paige H. Montgomery
Texas Bar No. 24037131
pmontgomery@sidley.com
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 981-3300
(214) 981-3400 (facsimile)

Robert W. Weber
Texas State Bar No. 21044800
**Sᴍɪᴛʜ Wᴇʙᴇʀ, L.L.P.**
5505 Plaza Drive
Texarkana, TX 75503
TEL:  903-223-5656
FAX:  903-223-5652
E-mail: bweber@smithweber.com

**COUNSEL FOR DEFENDANT BLUE CROSS
BLUE SHIELD OF TEXAS, A DIVISION OF
HEALTH CARE SERVICE CORPORATION,
A MUTUAL LEGAL RESERVE COMPANY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document

has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure

and this Court's CM/ECF filing system on July 21, 2020.

*/s/ Paige H. Montgomery*_____
Paige H. Montgomery