**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **PINEY WOODS ER III, LLC,** *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 5:20-cv-00041-RWS** |
| **BLUE CROSS BLUE SHIELD OF** | § | |
| **TEXAS, A DIVISION OF HEALTH** | § | |
| **CARE SERVICE CORPORATION, A** | § | |
| **MUTUAL LEGAL RESERVE** | § | |
| **COMPANY,** | § | |
| | § | |
| *Defendant*. | § | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED**
**COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 3

STATEMENT OF ISSUES ..................................................................................... 6

STANDARD OF REVIEW ...................................................................................... 7

I.     PLAINTIFFS' DECLARATORY JUDGMENT COUNT MUST BE
       DISMISSED FOR FAILURE TO STATE A CLAIM. ................................ 7

       A.     Count V must be dismissed because the Texas Declaratory Relief Act
              does not apply to actions in federal court. ...........................................8

       B.     Count V fails to state a claim because the state or federal statutes
              plaintiffs rely on grant no private right of action. ...............................9

       C.     Plaintiffs fail to state a claim under Count V as to ERISA claims
              because they lack standing. .................................................................12

II.    PLAINTIFFS' REMAINING CAUSES OF ACTION, ALL PREMISED ON
       THE SAME MISSTATEMENT OF THE REQUIREMENTS OF THE
       TEXAS INSURANCE CODE, TEXAS ADMINISTRATIVE CODE, OR
       THE AFFORDABLE CARE ACT, LIKEWISE FAIL. ............................... 14

       A.     Sections 3.3708(a)of the Texas Administrative Code is invalid. .....14

       B.     The "usual and customary rate" as used in the Texas Insurance Code
              does not require payment based on provider charges. ......................15

       C.     The Affordable Care Act's "Greatest of Three" requirement does not
              apply to Plaintiffs' claims. ................................................................16

III.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED, IN PART, AS
       BARRED BY STATUTES OF LIMITATIONS ......................................... 19

IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR THE REASONS
       RAISED IN DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
       ORIGINAL COMPLAINT ........................................................................ 21

CONCLUSION ..................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Air Evac EMS Inc. v. USAble Mut. Ins. Co*.,
No. 4:16-CV-266 BSM, 2018 WL 2422314 (E.D. Ark. May 29, 2018),
*aff'd* 931 F.3d 647 (8th Cir. 2019) .........................................................................................11

*Angelina Emergency Med. Assoc. PA v. Health Care Serv. Corp.*,
3:18-CV-00425-X, 2020 WL 7259222 (N.D. Tex. Dec. 10, 2020)........................................10

*Apollo MedFlight, LLC v. BlueCross BlueShield of Tex.*,
No. 2:18-CV-0166-D-BR, 2019 WL 2539272 (N.D. Tex. Apr. 12, 2019) ............................11

*Apollo MedFlight, LLC v. Bluecross Blueshield of Tex.*,
No. 2:18-CV-166-Z-BR, 2019 WL 4894263 (N.D. Tex. Oct. 4, 2019) .................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................7

*Bardowell v. Mut. of Omaha Ins. Co.*,
985 F.2d 557 (5th Cir. 1993) .............................................................................................3, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................6, 7

*Brewer v. Lutron Elecs. Co., Inc.*,
795 F. App'x. 250 (5th Cir. 2019) ...............................................................................3, 19, 20

*Ears & Hearing, P.A. v. Blue Cross & Blue Shield of Tex.*,
No. 1:18-CV-00726-LY, 2019 WL 3557349 (W.D. Tex. Aug. 5, 2019).........................10, 11

*Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*,
221 F. Supp. 3d 853 (S.D. Tex. 2016) ...................................................................................13

*Emergency Health Ctr. at Willowbrook, L.L.C. v. UnitedHealthcare of Tex., Inc.*,
892 F. Supp. 2d 847 (S.D. Tex. 2012) ...................................................................................18

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
824 F.3d 507 (5th Cir. 2016) .................................................................................................13

*Flanary v. Mortg. Elec. Registration Sys., Inc.*,
No. 4:15CV208-AM-CMC, 2016 WL 3647983 (E.D. Tex. June 6, 2016) ..............................8

*Lopez ex rel. Gutierrez v. Premium Auto Acceptance Corp.*,
389 F.3d 504 (5th Cir. 2004) .............................................................................................3, 19

*Guzman v. Jones*,
    804 F.3d 707 (5th Cir. 2015) ...................................................................................3

*Harris Cty. Tex. v. MERSCORP Inc.*,
    791 F.3d 545 (5th Cir. 2015) ..............................................................................9, 11

*Harris Methodist Fort Worth v. Sales Support Servs. Inc. Employee Health Care
    Plan*, 426 F.3d 330 (5th Cir. 2005) ....................................................................12

*Lehman-Menley v. Boston Old Colony Ins. Co.*,
    A-05-CA-1054 LY, 2006 WL 2167258 (W.D. Tex. July 31, 2006) ......................19

*Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.*,
    16 F. Supp. 3d 767 (S.D. Tex. 2014) ...................................................................13

*In re N. Cypress Med. Ctr. Operating Co., Ltd.*
    559 S.W.3d 128 (Tex. 2018) ...................................................................................3

*Peacock v. AARP, Inc.*,
    181 F. Supp. 3d 430 (S.D. Tex. 2016) .................................................................10

*Pluet v. Frasier*,
    355 F.3d 381 (5th Cir.2004) ................................................................................13

*Pretz v. Hartford Life Ins. Co.*,
    1-14-CV-92, 2014 WL 12618072 (E.D. Tex. Dec. 11, 2014) ...............................19

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) .................................................................................7

*Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*,
    99 F.3d 746 (5th Cir. 1996) ...................................................................................9

*Sims v. RoundPoint Mortg. Servicing Corp.*,
    No. 6:16CV1349, 2018 WL 1308967 (E.D. Tex. Feb. 13, 2018),
    *aff'd*, 760 F. App'x 306 (5th Cir. 2019) .................................................................9

*Terry v. Health Care Serv. Corp.*,
    344 F. Supp. 3d 1314 (W.D. Okla. 2018) .............................................................11

*Terry v. Safeco Ins. Co. of Am.*,
    930 F. Supp. 2d 702 (S.D. Tex. 2013) .................................................................10

*United Motorcoach Ass'n, Inc. v. City of Austin*,
    851 F.3d 489 (5th Cir. 2017) ...............................................................................16

*Vera v. Bank of Am., N.A.*,
    569 F. App'x 349 (5th Cir. 2014) ...........................................................................8

**Statutes/Rules**

29 U.S.C. § 1132(a) ........................................................................12

42 U.S.C. § 300gg–6(a) ..................................................................16

42 U.S.C. § 300gg–19a ..............................................6, 16, 17, 18

42 U.S.C. § 18022 ....................................................................16, 17

45 C.F.R. § 147.138 ..................................................................6, 18

Fed. R. Civ. P. 8 ..............................................................................1, 7

Fed. R. Civ. P. 12(b) .......................................................................1, 7

Tex. Admin. Code § 3.3701 .......................................................10, 11

Tex. Admin. Code § 3.3708 ................................6, 10, 11, 14

Tex. Civ. Prac & Rem. Code § 37.003 ........................................8

Tex. Civ. Prac & Rem. Code § 37.004 ........................................8

Tex. Ins. Code § 1271.155 ......................................................9, 10

Tex. Ins. Code § 1301.0053 .........................................................10

Tex. Ins. Code § 1301.155 ...............................................................9

Tex. Ins. Code § 1301.156 ...............................................................9

**Other**

80 Fed. Reg. 72192-01, *72213 (Nov. 18, 2015) ........................17

Defendant Blue Cross and Blue Shield of Texas, a division of Health Care Service Corporation, a Mutual Legal Reserve Company, ("BCBSTX"), respectfully moves this Court to dismiss Plaintiffs' First Amended Complaint ("Amended Complaint") (Dkt. 57) pursuant to Federal Rules of Civil Procedure 8, 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

On November 30, 2020, Plaintiffs filed their Amended Complaint, adding twenty-five new Plaintiffs to this suit and significantly increasing the magnitude of this case. The Plaintiffs now encompass twenty companies that operate free-standing emergency medical care facilities (the "FEC Plaintiffs") and ten companies or associations that employed physicians that staff FECs ("the Physician Group Plaintiffs") (Am. Compl. ¶¶ 1–30).  Plaintiffs collectively assert that BCBSTX purposefully under-reimbursed Plaintiffs for their services provided to unidentified patients—who ostensibly had coverage under BCBSTX insured or administered health plans—in a "concerted effort" to drive Plaintiffs out of business.  (*See, e.g., id.* ¶¶ 1–3).[1]  Plaintiffs allege that "both state and federal law require health insurers like BCBSTX to pay the 'usual and customary rate' for emergency services provided by out of network providers, such as free-standing emergency centers and their associated physicians groups."  (*Id.* ¶ 2). Plaintiffs also allege that the "usual and customary rate" refers to the amount the provider charges for its services."  (*Id.* ¶ 49).

Plaintiffs bring five causes of action against BCBSTX in their Amended Complaint: breach of ERISA payment obligations (Count I), breach of contract (Count II), bad faith insurance practices, (Count III), negligent misrepresentation (Count IV), and declaratory judgment (Count V).  All Counts fail to state a claim and should be dismissed.

---

[1] Plaintiffs' Amended Complaint contains two sets of paragraphs one through three.  The paragraphs cited here refer to the first set of paragraphs one through three, contained on the first two pages of Plaintiffs' Amended Complaint.

As to Count V, this Count fails for four independent reasons.  First, Plaintiffs seek a declaratory judgment under the Texas Civil Practices and Remedies Code, which is inapplicable in federal court.  This is reason alone for the Court to dismiss Count V.  Second, even if the Court were to ignore Plaintiffs' stated basis for relief and construe Plaintiffs' request for declaratory judgment as brought under the federal Declaratory Judgment Act, the federal Declaratory Judgment Act does not provide a substantive cause of action and there is no private right of action under any of the Texas Insurance Code, the Texas Administrative Code, or the Affordable Care Act ("ACA") provisions at issue in Plaintiffs' request for declaratory relief.  Third, even if there were a private right of action under these laws, Count V would still fail.  The Texas Administrative Code sections related to PPO claims brought by Plaintiffs have been declared invalid, and the Texas Department of Insurance ("TDI") has made clear that the "usual and customary rate" as that term is used in connection with HMO and EPO plans is the insurer's regular payment rate, not whatever the provider unilaterally sets as its charges.  Moreover, ACA's "greatest of three" requirement does not salvage Plaintiffs' claim because it is inapplicable to Plaintiffs.  Finally, Plaintiffs lack standing to seek clarification to future benefits because they are not participants, beneficiaries or assignees as to future health plans governed by ERISA that may provide coverage for patients who have not yet visited a Plaintiff facility.

Counts I–IV also fail because neither the Texas nor federal law relied upon by Plaintiffs require payment of Plaintiffs' full billed charges.  The face of the complaint admits that two years of claims allegedly in dispute under Counts I–IV must also be dismissed in part because those counts go beyond the applicable statute of limitations.  Plaintiffs purport to bring claims "for the six-year period preceding the filing of this complaint."  (Am. Comp. ¶ 95).  But Counts I-IV are subject to either two- or four-year statutes of limitations. *Lopez ex rel. Gutierrez v. Premium Auto*

*Acceptance Corp.,* 389 F.3d 504, 509 (5th Cir. 2004) (*citing Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992)) (discussing breach of contract and ERISA claims); *Brewer v. Lutron Elecs. Co., Inc*., 795 F. App'x. 250, 252–53 (5th Cir. 2019); *Bardowell v. Mut. of Omaha Ins. Co.,* 985 F.2d 557 (5th Cir. 1993).  Therefore, any claims based on facts before these time periods are barred as a matter of law.

Finally, BCBSTX herein incorporates by reference its 12(b)(1) standing arguments and 12(b)(6) arguments related to Plaintiffs' ERISA, breach of contract, bad faith, negligent misrepresentation and declaratory judgment claims put forth in BCBSTX's Motion to Dismiss Plaintiffs' Original Complaint (Dkt. 14) and Reply (Dkt. 24).  Thus, for all the reasons stated above, BCBSTX respectfully requests the Court grant its Motion and dismiss Plaintiffs' claims with prejudice.

## BACKGROUND

Even if  Plaintiffs may enjoy wide discretion with respect to setting their charges, insurers in Texas are not required to use those prices as the measure of reimbursement for their services. Indeed, Texas courts have repeatedly noted that provider charges and rates of reimbursement are not synonymous, particularly for out-of-network providers tempted to charge highly inflated "list prices" for their services.  *Guzman v. Jones*, 804 F.3d 707, 711 (5th Cir. 2015) (explaining that providers "set their full charges as high as possible" while understanding the reimbursement rates will not cover those full charges) (quoting *Haygood v. De Escabedo*, 356 S.W.3d 390, 393–94 (Tex. 2011)); *see also In re N. Cypress Med. Ctr. Operating Co., Ltd.* 559 S.W.3d 128, 132–33 (Tex. 2018) (noting that provider charges are "frequently uncollected," "arbitrary" and do not indicate reasonable pricing).

Despite this industry-wide understanding regarding the relationship between inflated out-of-network list prices (i.e. provider charges) and reimbursement under commercial health plans, Plaintiffs' Amended Complaint grounds all of its causes of action on the false premise that Texas and federal law require BCBSTX to reimburse Plaintiffs at a "usual and customary rate," that they assert equals their billed charges.  (*See generally*, Am. Compl. ¶ 49 ("under Texas law, the 'usual and customary rate' refers to the amount the provider charges for its services"); ¶ 62 (Plaintiffs' charges are equal to the "usual and customary" rate); ¶ 70 (complaining that BCBSTX did not pay their "billed charges"); *see also* Pls. Resp. to Mot to Dismiss Original Compl. (Dkt. 18) at 5 (explaining that BCBSTX must reimburse Plaintiffs at the "usual and customary rate")).[2] Accordingly, Plaintiffs ask this Court to grant a declaratory judgment that the Texas Insurance Code and Texas Administrative Code require BCBSTX "to reimburse Plaintiffs and the Class at a usual and customary rate." (Am. Compl. ¶¶ 35, 134).

Plaintiffs' claims for breach of ERISA obligations, breach of contract, bad faith insurance practices, and negligent misrepresentation likewise turn on the same mischaracterization of law. Plaintiffs allege that BCBSTX violated its ERISA payment obligations and breached the purportedly applicable (but unidentified) BCBSTX insurance contracts by failing to pay the "usual and customary rate" as supposedly "defined by Texas law or as prescribed under applicable law

---

[2] Plaintiffs—at least the five who have made additional disclosures in accordance with the Court's Discovery Order (Dkt. 45)—have carried this theme forward in their mandatory disclosure of damages computations, asserting that they were entitled to reimbursement—on every claim at issue—at their unilaterally set charges and that their damages are measured simply as any unpaid portion of those billed charges.

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT                    **Page 4**

and regulations."  (Am. Compl. ¶¶ 55, 108–09, 117–19).[3]  Plaintiffs' bad faith and negligent misrepresentation claims are similarly grounded on the same supposed law and regulations.[4]

Plaintiffs' claims fail because they all turn on incorrect statements of Texas and federal law.  First, Plaintiffs rely heavily on Section 3.3708 of the Texas Administrative Code as a basis to allege both that Texas insured PPO plans must pay claims at a "usual and customary rate" and that the rate is based on providers' "charges."  But shortly after the Court ruled on BCBSTX's motion to dismiss the original complaint, Section 3.3708 of the Texas Administrative Code was declared invalid, and it cannot form the basis of any cause of action in this case.  Second, the Texas Department of Insurance has explained—contrary to Plaintiffs' assertions in this case—that the term "usual and customary rate" means the insurer's regular rate, and ***not*** the amount charged by the provider.  Finally, with regard to any ERISA plans to which the ACA applies, the ACA's "greatest of three" regulation that forms the basis of Plaintiffs' claims does not apply to services at a *freestanding* emergency room.  Instead, the "greatest of three" regulation applies only to

---

[3] To the extent Plaintiffs claim that BCBSTX was also required to reimburse Plaintiffs at the "usual and customary rate" because of the language in the purported "exemplar" insurance policy provisions, this is no different than Plaintiffs' reliance on Texas and federal law.  (*See* Am. Compl. ¶¶ 108, 119, 122).  According to Plaintiffs' allegations, the purported requirement under the exemplar plans that BCBSTX reimburse Plaintiffs at the "usual and customary rate" is tied to the Texas Insurance Code, Texas Administrative Code or the Affordable Care Act.  (*See* Am. Compl. ¶ 55 "The BCBS PPO Plans require reimbursement . . . of the Allowable Amount. . . . The Allowable Amount for emergency care is set at 'the usual or customary amount as defined by Texas law or as prescribed under applicable law or regulations.'").  The "Texas law" and "applicable law or regulations" discussed in Plaintiffs' Amended Complaint are the Texas Insurance Code, Texas Administrative Code and the Affordable Care Act.  (*See id.* ¶¶ 46–52, 57).
[4] For example, Plaintiffs' bad faith insurance practices count incorporates the same allegations that BCBSTX is supposedly required by state and federal law to reimburse all claims at the "usual and customary rate" and that BCBSTX acted in bad faith by not making "full payment" of Plaintiffs' billed charges.  (*See* Am. Compl. ¶¶ 121, 123).  Plaintiffs' claim for negligent misrepresentation is similarly premised on BCBSTX's purported misrepresentations to justify payment at less than Plaintiffs' full-billed charges.  (*See* Am. Compl. ¶ 126 (alleging that BCBSTX misrepresentations consist of reasons for "not providing full reimbursements")).

services provided *in* the *emergency department of a hospital.*  42 U.S.C. § 300gg–19a(b)(2)(B) (emphasis added).  Moreover, even if the ACA applied to services provided in a FEC, the ACA does not require health plans to reimburse emergency services at more than the greatest of (i) 100% of what Medicare would pay, (ii) whatever the health plan's standard out-of-network reimbursement would be, or (iii) what the median payment to an in-network provider for the same services would be.  45 C.F.R. § 147.138(b)(3)(i)(B).  Plaintiffs baldly state that BCBSTX violated federal law by not paying Plaintiffs' billed charges, but Plaintiffs do not, and cannot, plead that their billed charges were equal to any of those metrics.  Instead, without any cited support, Plaintiffs read into the "greatest of three" regulation a requirement to pay "usual and customary rates," though no such requirement exists.

Once the Court dispatches with Plaintiffs' predicate misstatements of law, Plaintiffs' Amended Complaint is left without any well-pleaded allegations sufficient to state a plausible clam under *Twombly* that BCBSTX improperly reimbursed any—let alone all—of Plaintiffs' claims during the past four years.  Thus, all of Plaintiffs' causes of action should be dismissed.

## STATEMENT OF ISSUES

1.  Do Plaintiffs fail to state a claim for declaratory judgment because the Texas Civil Practices and Remedies Code does not apply to actions brought in federal court?

2.  Do Plaintiffs fail to state claims for declaratory judgment because the Texas Insurance Code, the Texas Administrative Code, and the Affordable Care Act do not create a private right of action?

3.  Do Plaintiffs fail to state a claim for declaratory judgment as to the ERISA-funded claims because they lack standing to seek a declaratory judgment for services they have not yet rendered?

4.  Do Plaintiffs fail to state a claim for Counts I–V as to BCBSTX insured health plans because Section 3.3708 of the Texas Administrative Code has been declared invalid?

5.  Do Plaintiffs fail to state a claim for Counts I–V as to BCBSTX insured health plans because the usual and customary rate has been interpreted by the TDI as the amount paid by the insurer?

6. Do Plaintiffs fail to state a claim for Counts I, III–V as to ERISA-funded claims because the Affordable Care Act's "greatest of three" rule is not applicable to Plaintiffs?

7. Do Plaintiffs fail to state a claim as to at least parts of Counts I–IV because those claims are barred by the applicable statute of limitations?

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim if the Court lacks subject-matter jurisdiction. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the jurisdictional attack before addressing any attack on the  merits."  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

To survive a Rule 12(b)(6) motion, Plaintiffs' factual allegations must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere legal conclusions or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must contain "***factual content*** [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id*. at 678 (emphasis added), citing *Twombly*, 550 U.S. at 556, and to give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest. Fed. R. Civ. P. 8(a). Failure to satisfy this standard is grounds for dismissal.

## ARGUMENT

## I.     PLAINTIFFS' DECLARATORY JUDGMENT COUNT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiffs ask the Court to declare that: "The Texas Insurance Code and Texas Administrative Code require Defendant to reimburse Plaintiffs and the Class at a usual and customary rate."  (Am. Compl., Prayer for Relief, at ¶ 5) and that the "usual and customary rate" must be based on their charges.  (Am. Compl. ¶ 134).  And while the declaratory relief that they seek does not encompass federal law, in Count V  Plaintiffs inappositely assert that "BCBS has

also violated the ACA's greater-of-three requirement . . . ."  (Am. Compl. ¶ 137).  Regardless of how broadly the Court construes Plaintiffs' request for declaratory judgment—whether limited to the requirements of the Texas Insurance Code, or also seeking judicial pronouncements of the reach of the ACA—Count V fails to state a claim.

As discussed *infra*, every cause of action in the Amended Complaint should be dismissed because the Texas statutes and federal law upon which Plaintiffs base their claims do not require reimbursement at the "usual or customary rate" in the manner Plaintiffs allege.  Plaintiffs' declaratory judgment claim should be dismissed for three additional, independent reasons: the Texas Declaratory Relief Act does not apply to actions in federal court, the Texas and federal law on which Plaintiffs rely (even if the law did require reimbursement as Plaintiffs claim) provides no private right of action, and Plaintiffs lack standing to a declaration as to future ERISA benefits.

### A.    Count V must be dismissed because the Texas Declaratory Relief Act does not apply to actions in federal court.

Plaintiffs seek a declaratory judgment "pursuant to TEX. CIV. PRAC & REM. CODE §§ 37.003 & 37.004," (Am. Compl. at 35), which is the Texas Declaratory Judgments Act ("TDJA"). However, the Texas Declaratory Judgments Act is procedural and therefore does not apply to actions in federal court.  *See, e.g.*, *Flanary v. Mortg. Elec. Registration Sys., Inc.*, No. 4:15CV208-AM-CMC, 2016 WL 3647983, at *7 (E.D. Tex. June 6, 2016).

The Fifth Circuit has held that a plaintiff fails to state a claim for declaratory relief in federal court when the claim is brought under the Texas Declaratory Judgments Act.  *Vera v. Bank of Am., N.A.*, 569 F. App'x 349, 352 (5th Cir. 2014) (holding "Plaintiffs [could not] maintain their declaratory judgment action against Defendants" because the "TDJA is a procedural, and not a substantive provision and therefore does not apply to actions in federal court").  Under controlling Fifth Circuit authority, the Court must therefore dismiss Count V.

B.     **Count V fails to state a claim because the state or federal statutes plaintiffs rely on grant no private right of action**.

Even if the Court were to construe Plaintiffs' claim as seeking relief under the federal Declaratory Judgment Act, Plaintiffs would still fail to state a claim because there are no private rights of action for the Texas Insurance Code, the Texas Administrative Code, or Affordable Care Act provisions that Plaintiffs rely on as the bases of their claim. The federal Declaratory Judgment Act is remedial only and "does not create any substantive rights or causes of action." *Sims v. RoundPoint Mortg. Servicing Corp.*, No. 6:16CV1349, 2018 WL 1308967, at *10 (E.D. Tex. Feb. 13, 2018), *aff'd*, 760 F. App'x 306 (5th Cir. 2019); *see also Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996) (construing the request for declaratory judgment "as a theory of recovery predicated upon the cause of action for breach of contract"). As a result, Plaintiffs are foreclosed from seeking declaratory relief under statutes that do not grant private rights of action. *See Harris Cty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552–53 (5th Cir. 2015) (holding district court properly dismissed declaratory judgment claim seeking relief under Texas Local Government Code section 192.007 because "the Texas Legislature did not create a private right of action to enforce section 192.007"). Plaintiffs cannot use a declaratory judgment claim to circumvent the fact that they cannot bring direct claims under the Texas Insurance Code, the Texas Administrative Code, or the Affordable Care Act.

1.     *There are no private rights of action under sections 1301.155, 1301.156, or 1271.155 of the Texas Insurance Code.*

Plaintiffs rely on three sections of the Texas Insurance Code:  Sections 1301.155, 1301.156 and 1271.155. (Am. Compl. ¶¶ 134–35). The Supreme Court of Texas "has made it abundantly clear that Texas statutes create a private right of action 'only when a legislative intent to do so appears in the statute as written.'" *Angelina Emergency Med. Assoc. PA v. Health Care Serv.*

*Corp.*, 3:18-CV-00425-X, 2020 WL 7259222, at *6 (N.D. Tex. Dec. 10, 2020) (quoting *Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004)); *see Apollo MedFlight, LLC v. Bluecross Blueshield of Tex.*, No. 2:18-CV-166-Z-BR, 2019 WL 4894263, at *1 (N.D. Tex. Oct. 4, 2019). "The Texas Insurance Code is a comprehensive set of laws, divided in 21 Titles with multiple chapters and subchapters in each Title. **Very few of its sections explicitly provide for a private right of action.**" *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 436 (S.D. Tex. 2016) (emphasis added). None of the sections of the Texas Insurance Code referenced in the Amended Complaint provide for such a right.

Courts in this Circuit routinely hold that no private right of action exists for the Texas Insurance Code provisions that Plaintiffs seek to enforce here. *See Angelina*, 2020 WL 7259222, at *6 (finding TEX. INS. CODE §§ 1301.0053(a) and 1271.155(a) did not give rise to a private right of action); *Apollo MedFlight*, 2019 WL 4894263, at *1 (holding there is no private right of under sections 1301.155 and 1271.155 of the Texas Insurance Code); *Ears & Hearing, P.A. v. Blue Cross & Blue Shield of Tex.*, No. 1:18-CV-00726-LY, 2019 WL 3557349, at *8 (W.D. Tex. Aug. 5, 2019) (holding Section 1301.056 could only be enforced through Subchapter A, Chapter 542 and "§ 542.003 makes it unlawful to engage in 'unfair claim settlement practices' but makes no reference to a private enforcement right."); *Terry v. Safeco Ins. Co. of Am.*, 930 F. Supp. 2d 702, 714 (S.D. Tex. 2013) (holding no private right of action under § 542.003(b), also known as the Texas Unfair Settlement Practices Act).

2.      *There was no private right of action under Texas Administrative Code Section 3.3708 even before it was declared invalid.*

Plaintiffs also request declaratory relief based on the PPO provisions of the Texas Administrative Code.  While the regulation upon which they relied has since been declared invalid,[5] it was never firm footing for a declaratory judgment action because the regulations expressly state that "these sections do not provide a private cause of action for damages . . . or provide a basis for a private cause of action." Tex. Admin. Code § 3.3701(d).  "Section 3.3701 defines the 'Applicability and Scope' of Chapter 3, Subchapter X of the Texas Administrative Code, which includes section . . . 3.3708." *Ears & Hearing*, 2019 WL 3557349, at *8 (dismissing claims under Texas Administrative Code because there is no private right of action).  Thus, because Plaintiffs cannot bring a declaratory judgment claim to enforce rights under sections of a statute that do not create a private right of action, *see MERSCORP Inc.*, 791 F.3d at 552–53, Plaintiffs' request for declaratory judgment as to the Texas Administrative Code fails.

3.      *There is no private right of action to enforce the Affordable Care Act's "greatest of three" requirement.*

Similarly, the Affordable Care Act did not create a private right of action to enforce its provisions. *See Apollo MedFlight, LLC v. BlueCross BlueShield of Tex.*, No. 2:18-CV-0166-D-BR, 2019 WL 2539272, at *8 (N.D. Tex. Apr. 12, 2019) (finding the Affordable Care Act does not create an express or implied private right of action); *Terry v. Health Care Serv. Corp.*, 344 F. Supp. 3d 1314, 1324 (W.D. Okla. 2018) (granting motion to dismiss declaratory judgment that plaintiff's policy is non-compliant with the Affordable Care Act because "the Declaratory

---

[5] Further, as discussed in Section II A, the provision of the Texas Administrative Code that Plaintiffs rely on in the Amended Complaint has been declared invalid.  Thus, Plaintiffs' declaratory judgment claim under the Texas Administrative Code fails regardless of whether the Code provides a private right of action.

Judgment Act does not create a private right to relief and Plaintiffs have failed to state a claim for relief"); *Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, No. 4:16-CV-266 BSM, 2018 WL 2422314, at *3 (E.D. Ark. May 29, 2018) (holding that the Affordable Care Act does not create a private cause of action), *aff'd* 931 F.3d 647 (8th Cir. 2019). The Court should therefore dismiss Count V, Plaintiffs' request for declaratory judgment, since there are no private rights of action under the ACA regulation Plaintiffs are seeking to enforce.[6]

### C.    Plaintiffs fail to state a claim under Count V as to ERISA health plans because they lack standing.

As noted earlier, although not included in the prayer for relief, Plaintiffs appear to seek declaratory relief as to purported ERISA-governed claims based on the requirements of the ACA. (*See* Am. Compl. ¶ 137 (alleging that the ACA's supposed "greatest of three" requirement is enforceable under a claim for ERISA benefits)).

As an initial matter, healthcare providers like Plaintiffs lack independent standing to seek relief under ERISA.  *See* 29 U.S.C. § 1132(a) (providing an enumerated list of those who may bring "a civil action"); *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Employee Health Care Plan*, 426 F.3d 330, 333–34 (5th Cir. 2005) (noting that a healthcare provider is "not a statutorily designated ERISA beneficiary").   Because they lack independent standing, the declaratory judgment claim must be dismissed to the extent brought in Plaintiffs' own right.   *See Harris Methodist Fort Worth*, 426 F.3d at 333–34 ("[A] healthcare provider . . . may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim.").

---

[6] Further, as discussed in Section II C, the ACA "greatest of three" regulation does not apply to Plaintiffs. Thus, Plaintiffs' claim under ACA fails regardless of whether the Act provides a private right of action.

Nor do Plaintiffs' alleged receipt of valid assignments of benefits from patients for past services on past claims for reimbursement under such plans avoid dismissal of the declaratory judgment claim; the claim is still either redundant of Counts I and II or seeks relief well beyond the alleged scope of the patient's assignments.

On one hand, if the claim concerns BCBSTX's alleged prior conduct of underpaying Plaintiffs for some unspecified universe of claims, these issues will be resolved as part of other claims in the lawsuit, either on the pleadings or on the merits.  A separate declaratory judgment action would therefore be redundant.  (*See* Am. Compl. ¶ 138 ("Plaintiffs and the Class seeks a declaratory judgment from this Court determining its rights to reimbursement for services rendered to BCBS' insured at the usual and customary rate . . . .")); *see Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016) (holding a declaratory judgment claim redundant of breach of other claims in the suit has no "useful purpose").

On the other, to the extent that Plaintiffs are attempting to use the declaratory judgment count to seek a declaration with respect to future ERISA rights, Plaintiffs do not allege that they have assignments that permit them to seek that relief.  *See Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 776 (S.D. Tex. 2014) (holding plaintiffs did not have standing to bring ERISA claims when the assignments were signed after plaintiffs filed the lawsuit); *see also Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 860 (S.D. Tex. 2016) (holding the assignment at issue did not assign the right to obtain plan documents and noting that "[i]ndeed it would be quite odd for plan participants to assign away all their rights to obtain current plan documents, in perpetuity, to a single medical provider rendering medical services on a single occasion"). A plaintiff must have standing at the time a complaint is filed to properly sue.  *Id*; *see Pluet v. Frasier*, 355 F.3d 381,

385–86 (5th Cir. 2004).  Here, Plaintiffs could not have had standing at the time they filed their Complaint (original or amended) to sue based on assignments they have not yet procured from patients who may, at some point in the future, seek treatment from Plaintiffs.

Accordingly, the Court should dismiss Plaintiffs' request for declaratory judgment as to any declarations pertaining to ERISA-governed health plans under the ACA (to the extent Plaintiffs seek such a declaration).

II.    **PLAINTIFFS' REMAINING CAUSES OF ACTION, ALL PREMISED ON THE SAME MISSTATEMENT OF THE REQUIREMENTS OF THE TEXAS INSURANCE CODE, TEXAS ADMINISTRATIVE CODE, OR THE AFFORDABLE CARE ACT, LIKEWISE FAIL.**

As explained above, all of Plaintiffs' causes of action are based on the same foundational assertions about the supposed universal requirements of Texas and federal law that BCBSTX must reimburse Plaintiffs at a "usual and customary rate" which they contend is equivalent to their unilaterally set billed charges. Plaintiffs misstate the law.  Neither the Texas Insurance Code nor the Texas Administrative Code requires BCBSTX to reimburse Plaintiffs at their full-billed charges.  Further, the Affordable Care Act "greatest of three" regulation does not even apply to Plaintiffs' services.  Plaintiffs have chosen to anchor their claims to these provisions of Texas and federal law, and because Plaintiffs have mischaracterized the requirements of these statutes in their Amended Complaint, Plaintiffs claims must be dismissed.

A.    **Section 3.3708(a) of the Texas Administrative Code is invalid.**

In the Amended Complaint, Plaintiffs base their claims as to all PPO plans on Section 3.3708(b)(1) of the Texas Administrative Code that purportedly "requires BCBSTX to pay FECs providing emergency care the usual and customary rate less any patient coinsurance, copayment, or deductible responsibility under the plan."  (*See* Am. Compl.¶¶ 55, 108, 117, 123,134). However, just two months ago a court invalidated Section 3.3708(a)—which makes the

requirements of 3.3708(b) and (c) applicable to PPO plans—because it was *ultra vires*. *Tex. Ass'n of Health Plans v. Tex. Dep't of Ins.*, Cause No. D-1-GN,18-003846 (419th Judicial District, Travis County, Oct. 15, 2020), attached hereto and incorporated herein as Exhibit A. The Texas Department of Insurance and Attorney General elected not to appeal that determination and therefore Section 3.3708 is a nullity.  As a result, Section 3.3708 does not apply to Texas insured health plans and cannot support Plaintiffs' claims under Counts I–V.

> ### B.      The "usual and customary rate" as used in the Texas Insurance Code does not require payment based on provider charges.

In addition, Plaintiffs' whole complaint hinges on the further assertion that "usual and customary rate" means, under Texas law, that reimbursement must be based on the Plaintiffs' billed charges.  Plaintiffs do not point to any authority for that proposition—because there is none. Both the statutorily designated regulatory authority—the TDI—and the state's chief law enforcement official—the Attorney General—have recognized as much.   Indeed, in recent litigation filed by the Texas Association of Health Plans challenging TDI's authority to promulgate some of the regulations at issue here, TDI and the Attorney General explained to the court that the "usual and customary rate" is the amount set by the insurer, not an amount based on provider charges as Plaintiffs argue here.  *See* Defendant's Response in Opp. to Plaintiffs' Amended Traditional Motion for Summary Judgment at 24, *Tex. Ass'n of Health Plans v. Tex. Dep't of Ins.*, Cause No. D-1-GN,18-003846 (419th Judicial District, Travis County, Oct. 15, 2020), attached hereto and incorporated herein as Exhibit B ("TDI Br.").

On August 14, 2020, in its Response in Opposition to Plaintiff's Amended Traditional Motion for Summary Judgment, TDI specifically stated that the plans "have always been allowed to . . . make their initial payment at the usual and customary 'rate,' ***which is set at their discretion***." *See id.* (emphasis added).  TDI explained that "[b]ecause no payment methodology is attached to

the term 'usual and customary rate,' EPOs and HMOs have been permitted to set their payment amounts at their discretion . . . ."  *Id.* at 22.  TDI further stated that "[a]lthough it is true that the insured is not liable, it does not follow that an insurer *must* pay all of the amount billed beyond the insurer's initial responsibility."  *Id.* at 21.

Of course, Plaintiffs point to no definition of "usual and customary rate" that supports their interpretation—an interpretation that is contrary to the way in which TDI and the Texas Attorney General have construed those terms.  Indeed, while the legislature did not define the term "usual and customary rate" in the HMO and PPO provisions of the Insurance Code, the legislature has defined the term elsewhere in the Code—and the definition also contradicts Plaintiffs' interpretation.  *See* Tex. Ins. Code. §§ 1551.003(15), 1575.002(8), 1579.002(8) (defining "usual and customary rate" as "the relevant allowable amount as described in the applicable master benefit plan document or policy").  Thus, the Texas Insurance Code defines the "usual and customary rate" as whatever amount the plan has decided to set as the "allowable amount" and not based on provider charges or third-party benchmarks.  *See United Motorcoach Ass'n, Inc. v. City of Austin*, 851 F.3d 489, 494 (5th Cir. 2017) (holding when identical language is used in different parts of a statute, the language is generally interpreted to have the same meaning).

C.    **The Affordable Care Act's "Greatest of Three" requirement does not apply to Plaintiffs' claims.**

Further, Plaintiffs' causes of action grounded in ACA's "greatest of three" requirement also fail to state a claim for relief.  (Am. Compl. ¶¶ 110, 123, 137).

Plaintiffs' Amended Complaint makes clear that they are ***neither*** hospitals ***nor*** the emergency department of a hospital and is emphatic in distinguishing hospital emergency departments (with whom Plaintiffs compete) with freestanding emergency medical care facilities. (Am. Compl. ¶ 36 (Plaintiffs licensed under the Texas Freestanding Emergency Care Facility

Licensing Act and not as hospitals) ("these independently licensed FECs differ from traditional hospital-based emergency rooms in several important respects"); ¶ 38 ("FECs . . . are unencumbered by the typical administrative bureaucracy and other challenges burdening hospital-based emergency departments"); ¶ 41 ("Unlike emergency departments attached to hospitals, FECs . . . [.]").  But, it is clear from the plain language of the ACA that "emergency services" do not include services that are provided in freestanding emergency medical care facilities.  Indeed, the very ACA provisions cited by Plaintiffs make clear that the ACA's "emergency services" requirements—including the greatest of three formula— apply only to services provided ***in*** the ***emergency department of a hospital.***  42 U.S.C. § 300gg–19a(b)(2)(B).  The ACA mandates that "[a] health insurance issuer that offers health insurance coverage in the individual or small group market shall ensure that such coverage includes the essential benefits package required under section 18022(a) of this title." 42 U.S.C. § 300gg–6(a). One of the essential benefits is "emergency services." 42 U.S.C. § 18022(b)(1)(B).  But the ACA limits the scope of "emergency services" to treatments provided by a ***hospital*** emergency department:

> The term "emergency services" means, with respect to an emergency medical condition—
> (i) ***a medical*** screening ***examination*** (as required under section 1395dd of this title) that is ***within the capability of the emergency department of a hospital***, including ancillary services routinely available to the emergency department to evaluate such emergency medical condition, and
> (ii) ***within the capabilities of the staff and facilities available at the hospital***, such further medical examination and treatment as are required under section 1395dd of this title to stabilize the patient.

42 U.S.C. § 300gg–19a(b)(2)(B) (emphasis added).

The ACA's "essential health benefits" provision — a provision upon which Plaintiffs rely (*see* Am. Compl. ¶ 51) — also plainly states that "emergency services" are those provided by a

hospital emergency department. 42 U.S.C. § 18022(b)(4)(E) ("(i) coverage for ***emergency department services*** will be provided without imposing . . . any limitation on coverage where the provider of services does not have a contractual relationship with the Policy for the providing of services that is more restrictive than the requirements or limitations that apply to ***emergency department services*** received from providers who do have such a contractual relationship with the plan.") (emphasis added).  The ACA's limitation of "emergency services" to hospital emergency departments is further bolstered by the fact the ACA defined "emergency services" using the definition in the Emergency Medical Treatment and Labor Act ("EMTALA").  *See* Final Rules for Grandfathered Plans, Preexisting Condition Exclusions, Lifetime and Annual Limits, Rescissions, Dependent Coverage, Appeals, and Patient Protections Under the Affordable Care Act, 80 Fed. Reg. 72192-01, \*72213 (Nov. 18, 2015) ("In applying the rules relating to emergency services, the terms emergency medical condition, emergency services, and stabilize have the meaning given to those terms under [EMTALA]."). EMTALA does not apply to FECs and explicitly requires only emergency departments ***within hospitals*** to provide emergency services.  42 U.S.C. § 300gg-19a(b)(1) ("[P]rovides or covers any benefits with respect to services ***in an emergency department of a hospital*** . . . .") (emphasis added).  As a matter of law, FECs are not hospitals as that term is defined in EMTALA.  *See Emergency Health Ctr. at Willowbrook, L.L.C. v. UnitedHealthcare of Tex., Inc.*, 892 F. Supp. 2d 847, 852 (S.D. Tex. 2012); *see also* 42 U.S.C. § 1395x(e)(7).

Further, the ACA provides no assistance to Plaintiffs because, even assuming *arguendo* the ACA's definition of "emergency services" was broad enough to encompass FECs (which it is not), the ACA does not require insurers to reimburse out-of-network emergency services at 100% of provider-billed charges. Specifically, the ACA does not require health plans to reimburse emergency services at more than the greatest of (i) 100% of what Medicare would pay, (ii)

whatever the health plan's standard out-of-network reimbursement would be, or (iii) what the median payment to an in-network provider for the same services would be.  45 C.F.R.  § 147.138(b)(3)(i)(B).[7]   Plaintiffs do not plead that their prices were equal to any of those metrics. Therefore their claims fail.

*     *     *

In conclusion, each of Plaintiffs' claims is based upon a misstatement of Texas law regarding "usual and customary rates."  The laws upon which Plaintiffs attempt to base their claims—the Texas Administrative Code, the Texas Insurance Code, and the Affordable Care Act— have been invalidated or are misstated by Plaintiffs in their attempt to manufacture a cause of action. Because none of the laws upon which Plaintiffs attempt to rely on actually require payment in the amount that is charged by a provider, all of Plaintiffs' claims must necessarily fail.

## III.   **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED, IN PART, AS BARRED BY STATUTES OF LIMITATIONS**

Plaintiffs contend this case involves every paid claim they submitted during the six-year period preceding the filing of the complaint.  (Am. Comp. ¶ 95).  However, the limitations periods on the causes of action are all far shorter than six years.

- **Four years**:  **Counts I & II** (ERISA benefits and state law breach of contract claims).  *See Lopez,* 389 F.3d at 509 (concluding that a section 1132(a)(1)(B) suit to enforce rights under an employee benefit plan is subject to Texas's residual four-year statute of limitations that governs contractual matters).

- **Two years**:  **Counts III & IV** (bad faith and negligent misrepresentation claims). *See Brewer*, 795 F. App'x. at 252–53 (negligent misrepresentation); *Bardowell,* 985 F.2d 557, 1993 WL 35709, at *5 (bad faith).

---

[7] No part of the "greatest of three" regulation mandates reimbursement of "emergency services" claims at a "usual and customary rate," let alone any rate based on a provider's billed charges.

Although Plaintiffs fail to identify particular time periods for any of their claims, all of their claims are grounded in BCBSTX's determination of benefits and purported improper denial of payment.  (Am. Compl. ¶¶ 109, 113, 118–19, 123, 126).  Thus, as to Counts I and II, any claims based on BCBSTX's purported claim denial or payment that occurred more than four years before Plaintiffs filed this lawsuit are barred and should be dismissed with prejudice.  *See Lopez*, 389 F.3d at 509 (concluding ERISA claims were barred); *Pretz v. Hartford Life Ins. Co*., 1-14-CV-92, 2014 WL 12618072, at *2 (E.D. Tex. Dec. 11, 2014) (dismissing insurance breach of contract claim based on statute of limitations).  As to Counts III and IV, any claims based on BCBSTX's purported improper issuance of denial that occurred more than two years before the filing of this lawsuit are barred and should be dismissed with prejudice.  *Lehman-Menley v. Boston Old Colony Ins. Co*., A-05-CA-1054 LY, 2006 WL 2167258, at *4 (W.D. Tex. July 31, 2006) (rejecting breach of the duty of good faith and fair dealing claim based on statute of limitations); *Brewer*, 795 F. App'x at 253 (affirming district's court dismissal of negligent misrepresentation claims barred by the statute of limitations). Plaintiffs filed the Original Complaint on March 19, 2020.  Accordingly, for the contract and ERISA claims, only those claims where benefits determinations were made on or after March 19, 2016 should survive, for bad faith only those claims where benefits determinations were made on or after March 19, 2018 would survive, and  the pertinent time period for the negligent misrepresentation would be for those claims in which BCBSTX communicated its benefit determination on or after March 19, 2018.  In dismissing the clearly time-barred claims based on the face of the Amended Complaint, the Court will streamline this dispute and prevent unnecessary discovery and litigation about claims that have expired.

IV.  **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR THE REASONS RAISED IN DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT**

BCBSTX re-urges and incorporates by reference its 12(b)(1) standing arguments and 12(b)(6) arguments related to Plaintiffs' ERISA, breach of contract, bad faith, negligent misrepresentation and declaratory judgment claims put forth in BCBSTX's Motion to Dismiss Plaintiffs' Original Complaint (Dkt. 14) and Reply (Dkt. 24).  Specifically, BCBSTX argued that the Court lacked subject matter jurisdiction over claims based on alleged assignments by unidentified assignors, that the Complaint failed to state a claim under ERISA or breach of contract because it did not identify plans or claims at issue, that the bad faith claim failed to state a claim because there was no special relationship between Plaintiffs and BCBSTX, that the negligent misrepresentation claim failed because Plaintiffs did not plead reliance on any alleged misrepresentations, and that the declaratory action claim failed because Plaintiffs' claim was based on unidentified contracts, past conduct, and sought resolution of issues resolved in other claims.

Although BCBSTX recognizes the Court rejected those arguments in its October 2 Order (Dkt. 38) regarding the Original Complaint, BCBSTX re-urges those arguments as to the Amended Complaint and the twenty-five plaintiffs who were not parties at the time BCBSTX filed its initial motion to dismiss.  Moreover, the fact that Plaintiffs added twenty-five new Plaintiffs to this lawsuit without adding or amending any substantive allegations in their Complaint makes the sufficiency of Plaintiffs' allegations regarding the exemplar plan language and allegations regarding BCBSTX's purported conduct as to the named Plaintiffs even less plausible on their face.  In arguing that they complied with the requirements of *Innova* with regard to the Original Complaint, Plaintiffs relied heavily on the assertion that they purportedly

identified a handful of specific claims that they submitted and that were allegedly underpaid and therefore a complete claims list was not necessary. *See* Pls. Resp. to Mot to Dismiss Original Compl. (Dkt. 18) at 11–14.  Defendant disagrees, but if true then Plaintiffs failure to add even a single additional purportedly underpaid claim to the text of the Amended Complaint, is an admission that the Amended Complaint contains no allegations that any actual claim submitted by any of the 25 new Plaintiffs was underpaid.

<u>**CONCLUSION**</u>

For the foregoing reasons, BCBSTX respectfully requests that the Court dismiss Counts I–V in Plaintiffs' First Amended Complaint with prejudice.  BCBSTX further respectfully requests such further relief to which it may be justly entitled.

Dated: December 21, 2020

Respectfully Submitted,

BY: */s/ Paige Holden Montgomery*
Paige Holden Montgomery
Texas Bar No. 24037131
pmontgomery@sidley.com
Natali Wyson
Texas Bar No. 24088689
nwyson@sidley.com
Claire Homsher
Texas Bar No. 24105899
chomsher@sidley.com
Mehzabin Lora Chowdhury
Texas Bar No. 24105600
lchowdhury@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 981-3300
(214) 981-3400 (facsimile)

Brian P. Kavanaugh
Texas Bar No. 24115132
bkavanaugh@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
(312) 853-7036 (facsimile)

Robert W. Weber
Texas State Bar No. 21044800
**SMITH WEBER, L.L.P.**
5505 Plaza Drive
Texarkana, TX 75503
TEL:  903-223-5656
FAX:  903-223-5652
E-mail: bweber@smithweber.com

**COUNSEL FOR DEFENDANT BLUE CROSS BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure and this Court's CM/ECF filing system on December 21, 2020.

/s/ *Paige Holden Montgomery*
Paige Holden Montgomery