# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| PINEY WOODS ER III, LLC; PINEY WOODS ER I, LLC; EXCEL ER PHYSICIANS EAST TEXAS, PLLC; AMERICA'S ER SITE 001; & WOODLANDS LONE STAR EMERGENCY PHYSICIANS GROUP, PLLC, ONYX INTERESTS, LLC, GEMINI EMERGENCY PHYSICIANS, PLLC, EROS, LLC, EMERGENCARE OPERATOR, LLC, STC EMERGENCY PHYSICIANS, PA, STC OPERATIONS, LLC, MY ER STCPR, LP, UPTOWN ER, PLLC, MY ER ABILENE, LLC, THE LUBBOCK EMERGENCY ROOM, LLC, WTER QUAKER, LLP, LUBBOCK EMERGENCY PHYSICIANS, PA, PRIMECARE EMERGENCY CENTER – ARLINGTON, LLC, PRIMECARE EMERGENCY CENTER, PLLC, SPHIER EMERGENCY ROOM, LLC, SPHIER EMERGENCY ROOM MANAGEMENT, LLC, EMERGENCY ROOM PHYSICIANS OF SPHIER, PLLC, ST. MICHAEL'S EMERGENCY CENTER, LLC, BEAUMONT ELITE EMERGENCY CENTER, LLC, BEAUMONT ER PHYSICIANS, PLLC, SUGARLAND EMERGENCY PHYSICIANS, PA, EC PLANO, LLC, EMERGENCY MEDICAL GROUP, LLC, LIFE SAVERS EMERGENCY ROOM, LLC, LIFE SAVERS EMERGENCY ROOM II, LLC, FORSEER MEDICS, INC., ICARE EMERGENCY ROOM, LLC, CHISHOLM TRAIL EMERGENCY CENTER, LLC, AND WOODBRIDGE EMERGENCY PHYSICIANS STAFFING GROUP, PLLC, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 5:20-cv-00041-RWS |
| BLUE CROSS BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, | § § § § § | |
| *Defendant*. | § | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFFS' THIRD AMENDED COMPLAINT**

Defendant Blue Cross and Blue Shield of Texas, a division of Health Care Service Corporation, a Mutual Legal Reserve Company, ("Defendant" or "BCBSTX")), respectfully submits this Answer and Affirmative Defenses, in response to Third Amended Complaint of Plaintiffs, Piney Woods ER III, LLC, Piney Woods ER I, LLC, Excel ER Physicians East Texas, PLLC, America's ER Site 001, LLC and, America's ER Site 002, LLC, Woodlands Lone Star Emergency Physicians Group, PLLC, Onyx Interests, LLC, Gemini Emergency Physicians, PLLC, EROS, LLC, Emergencare Operator, LLC, STC Emergency Physicians, PA, STC Operations, LLC, MY ER STCPR, LP, Uptown ER, PLLC, My ER Abilene, LLC, the Lubbock Emergency Room, LLC, WTER Quaker, LLP, Lubbock Emergency Physicians, PA, Primecare Emergency Center – Arlington, LLC, Primecare Emergency Center, PLLC, Sphier Emergency Room, LLC, Sphier Emergency Room Management, LLC, Emergency Room Physicians of Sphier, PLLC, St. Michael's Emergency Center, LLC, Beaumont Elite Emergency Center, LLC, Beaumont ER Physicians, PLLC, Sugarland Emergency Physicians, PA, EC Plano, LLC, Emergency Medical Group, LLC, Life Savers Emergency Room, LLC, Life Savers Emergency Room II, LLC, Forseer Medics, Inc., ICare Emergency Room, LLC, Chisholm Trail Emergency Center, LLC, and Woodbridge Emergency Physicians Staffing Group, PLLC (hereinafter, "Plaintiffs").

## ANSWER

1.      This litigation stems from the concerted effort by BCBS to systematically underpay free-standing emergency centers and their associated physician's groups for the life-saving care they provide in violation of state and federal law and the terms of BCBS' own insurance plans, in a concerted effort to drive them out of business.

**ANSWER:**      Denied.

2.      Specifically, both state and federal law require health insurers and administrators like BCBS to pay the "usual and customary rate" for emergency services provided by out of network providers, such as free-standing emergency centers and their associated physicians groups.  Further, BCBS' own insurance plans and the plans BCBS administers require coverage of insureds for emergency care including emergency care provided by out-of-network providers.  However, BCBS has repeatedly violated its obligations under Texas law, federal law, and the terms of its own plans to timely provide coverage at the usual and customary rate for BCBS members who present for emergency care at free-standing emergency centers.  BCBS' conduct potentially exposes patients  to unnecessary financial obligations to these emergency service providers and deprives those providers to payments for which they are entitled under the law, driving many of these providers out of business.

**ANSWER:**      BCBSTX admits that the Texas Insurance Code, at certain times and for certain

health insurance products and/or health maintenance organizations, has required issuers of

such products in Texas to reimburse covered "emergency care" provided by certain out-of-

network providers at a "usual and customary rate," which the Department of Insurance and

Texas Attorney General have interpreted to mean the amount set by the insurer as its usual and

customary rate, not an amount based on provider charges.  BCBSTX denies the remaining

allegations in this paragraph.

3.      Plaintiffs bring this action to recover monies BCBS owes Plaintiffs for its violation of state and federal law requiring it to properly administer, process, and pay claims for emergency care services.

**ANSWER:**      BCBSTX admits that Plaintiffs have filed the above-captioned lawsuit.

BCBSTX denies the remaining allegations in this paragraph.

## PARTIES

1.      Plaintiff Piney Woods ER III, LLC d/b/a Excel ER – Texarkana is a limited liability company organized and existing under the laws of the State of Texas that operated a free-standing emergency center.  Excel ER – Texarkana and/or Excel ER – Texarkana, LLC is the business name of the entity Piney Woods ER III, LLC.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

2.      Plaintiff Piney Woods ER I, LLC is a Texas limited liability company who

operated a freestanding emergency room doing business as Excel ER Tyler located in Tyler, Texas.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

3.      Plaintiff Excel ER Physicians East Texas, PLLC is a professional limited liability company organized and existing under the laws of the State of Texas that operates a physicians group that provided emergency medical care at the facilities operated by Piney Woods ER III, LLC and Piney Woods ER I, LLC.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

4.      Plaintiff America's ER Site 001, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as America's ER located in Magnolia, Texas.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

5.      Plaintiff America's ER Site 002, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as America's ER located in Cypress, Texas.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

6.      Plaintiff Woodlands Lone Star Emergency Physicians Group, PLLC is a Texas professional limited liability company who operates a physicians group providing emergency medical care at the facility operated by America's ER Site 001, LLC and America's ER Site 002, LLC.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

7.      Plaintiff Onyx Interests, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as Emergicare located in Houston, Texas.

**<u>ANSWER:</u>**     BCBSTX is without knowledge or information sufficient to form a belief as to

4

the truth of the allegations of this paragraph, which are therefore denied.

8.      Plaintiff Gemini Emergency Physicians, PLLC is a professional limited liability company organized and existing under the laws of the State of Texas that operates a physicians group that provide emergency medical care at the facility operated by Onyx Interests, LLC.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

9.      Plaintiff EROS, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as ER on Soncy located in Amarillo, Texas.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

10.      Plaintiff Emergencare Operator, LLC is a Texas limited liability company who operates a physicians group that provide emergency medical care at the facility operated by EROS, LLC.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

11.      Plaintiff STC Emergency Physicians, PA is a professional association organized and existing under the laws of the State of Texas that operates a physicians group that provide emergency medical care at the facility operated by STC Operations, LLC in San Marcos, TX.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

12.      Plaintiff STC Operations, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as My Emergency Room 24/7 located in San Marcos, Texas.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

13.      Plaintiff MY ER STCPR, LP is a Texas limited partnership who operated a freestanding emergency room doing business as My Emergency Room 24/7 located in San Antonio, Texas.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

14.     Plaintiff Uptown ER, PLLC is a Texas professional limited liability company who operated a freestanding emergency room doing business as Uptown ER located in Dallas, Texas.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

15.     Plaintiff My ER Abilene, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as My Emergency Room 24/7 located in Abilene, Texas.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

16.     Plaintiff The Lubbock Emergency Room, LLC is a Texas limited liability company who operated a freestanding emergency room doing business as West Texas ER located in Lubbock, Texas.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

17.     Plaintiff WTER Quaker, LLP is a Texas limited liability partnership who operates a freestanding emergency room doing business as West Texas ER located in Lubbock, Texas.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

18.     Plaintiff Lubbock Emergency Physicians, PA is a professional association organized and existing under the laws of the State of Texas that operates a physicians group that provide emergency medical care at the facilities operated by The Lubbock Emergency Room, LLC and WTER Quaker LLP.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

19.     Plaintiff Primecare Emergency Center – Arlington, LLC is a Texas limited

liability company who operates a freestanding emergency room doing business as PrimeCare Emergency Center located in Arlington, Texas.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

20.      Plaintiff Primecare Emergency Center, PLLC is a professional limited liability company organized and existing under the laws of the State of Texas that operates a physicians group that provide emergency medical care at the facility operated by Primecare Emergency Center – Arlington, LLC.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

21.      Plaintiff Sphier Emergency Room, LLC is a Texas limited liability company who operated a freestanding emergency room doing business as Sphier Emergency Room located in Katy, Texas.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

22.      Plaintiff Sphier Emergency Room Management, LLC is a Texas limited liability company who operated a freestanding emergency room doing business as Sphier Emergency Room located in Missouri City, Texas.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

23.      Plaintiff Emergency Room Physicians of Sphier, PLLC (dba Sphier ER Physicians PM, PLLC) is a professional limited liability company organized and existing under the laws of the State of Texas that operated a physicians group that provide emergency medical care at the facilities operated by Sphier Emergency Room, LLC and Sphier Emergency Room Management, LLC.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

24.      Plaintiff St. Michael's Emergency Center, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as St. Michael's Emergency Center located in Sugar Land, Texas.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

25.      Plaintiff Beaumont Elite Emergency Center, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as Beaumont Emergency Center located in Beaumont, Texas.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

26.      Plaintiff Beaumont ER Physicians, PLLC is a professional limited liability company organized and existing under the laws of the State of Texas that operates a physicians group that provide emergency medical care at the facilities operated by Beaumont Elite Emergency Center, LLC.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

27.      Plaintiff Sugarland Emergency Physicians PA is a professional association organized and existing under the laws of the State of Texas that operates a physicians group that provide emergency medical care at the facilities operated by St. Michael's Emergency Center, LLC.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

28.      Plaintiff EC Plano, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as Elitecare 24 HR Emergency located in Plano, Texas.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

29.      Plaintiff Emergency Medical Group, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as Elitecare Emergency Center located in Houston, Texas.

**ANSWER:**      BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied**.**

8

30.     Plaintiff Life Savers Emergency Room, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as Life Savers Emergency Room located in Houston, Texas.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

31.     Plaintiff Life Savers Emergency Room II, LLC is a Texas limited liability company who operates a freestanding emergency room in Houston, Texas

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

32.     Plaintiff Forseer Medics, Inc. is a corporation organized and existing under the laws of the State of Texas that operates a physicians group that provides emergency medical care at the facilities operated by Life Savers Emergency Room, LLC and Life Savers Emergency Room II, LLC

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

33.     Plaintiff ICare Emergency Center, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as ICare Emergency Room located in Frisco, Texas.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

34.     Plaintiff Chisholm Trail Emergency Center, LLC is a Texas limited liability company who operates a freestanding emergency room doing business as ICare Emergency Room located in Fort Worth, Texas.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

35.     Plaintiff Woodbridge Emergency Physicians Staffing Group, PLLC is a professional limited liability company organized and existing under the laws of the State of Texas that operates a physicians group that provides emergency services at the facilities operated by ICare Emergency Room, LLC and Chisholm Trail Emergency Center, LLC.

**ANSWER:**    BCBSTX is without knowledge or information sufficient to form a belief as to

the truth of the allegations of this paragraph, which are therefore denied.

36.    Defendant Blue Cross and Blue Shield of Texas, a division of Health Care
Service Corporation, a Mutual Legal Reserve Company is the largest health insurance
provider in Texas.  Upon information and belief, BCBS is a Mutual Legal Reserve Company
organized under the laws of the State of Illinois, with its principal place of business located in
Illinois. It operates a division that does business as "Blue Cross Blue Shield of Texas,"
located in Collin County, Texas and may be served by delivering a copy of the summons and
of the complaint to an officer at its headquarters at 1001 E. Lookout Drive Richardson, Texas
75082.

**ANSWER:**    BCBSTX admits it is an Illinois Mutual Legal Reserve Company with its

principal place of business located in Illinois.  BCBSTX admits that it does business in Texas

through its division Blue Cross and Blue Shield of Texas, which has its division headquarters

at 1001 E. Lookout Drive, Richardson, Texas 75082.   BCBSTX denies the remaining

allegations of this paragraph.

## JURISDICTION AND VENUE

37.    The Court has personal jurisdiction over Defendant BCBS because it conducts
substantial business in Texas and a substantial part of the events or omissions giving rise to
the Plaintiffs' claims occurred in Texas. Specifically, BCBS operates a division that does
business as "Blue Cross Blue Shield of Texas," headquartered in Texas, and is the largest
health insurer in the State of Texas. BCBS also serves as administrator for various health
insurance plans provided by the State of Texas and various municipalities within Texas, and
also administers and exercises control over the administration, processing, and payment of
claims in Texas on behalf of its sister Blue-Cross entities in other States.[1]

**ANSWER:**    BCBSTX admits that the Court may exercise personal jurisdiction over it in

---

[1] BCBS participates in the "Blue Card Program"—a national program that enables members of a Blue Cross and/or
Blue Shield Plan ("Blue Plan") to obtain health care services while traveling or living in another Blue Plan's service
area. The Program allows a member to receive the benefits provided by their Home Plan while accessing the
provider networks and savings from the Host Plan. When a member of an out-of-area Blue Plan receives medical
services from a health care provider, the provider submits a claim to the local Host Plan, not the member's Home
Plan. The Host Plan validates the provider information and exercises control over the pricing applicable to the claim.
The Home Plan reviews the member's coverage and determines whether the member was eligible to receive the
medical services rendered by the provider. The Host Plan then pays the provider. In other words, while the Home
Plan determines whether the services are covered, the Host Plan controls the amount reimbursed for the services.

this matter and that it conducts business in Texas through its division Blue Cross and Blue Shield of Texas.  BCBSTX admits that it performs administrative services for various Texas governmental entities, at both the state and local level, with respect to those entities' self-funded health plans.  BCBSTX denies the remaining allegations of this paragraph.

With respect to footnote 1 to paragraph 37, BCBSTX admits that it participates in the BlueCard Program and that BlueCard is a national program that enables members of one Blue Cross and Blue Shield Plan to obtain health care services while traveling or living in another independent Blue Cross and Blue Shield Plan's service area and allows out-of-state members of other independent Blue Cross and Blue Shield Plans to access network participating provider contracted rates when outside of their home plan's service area, while each Home Plan is responsible for making all eligibility, coverage and payment determinations for that Plan's members. BCBSTX admits that as recognized by the Fifth Circuit, the "local" or "host plan" in the BlueCard Program—in this case BCBSTX—does not have a contract with the insured, nor does it make coverage determinations on the claims under plans administered or insured by other independent licensees of the Blue Cross Blue Shield Association. *See Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 246 (5th Cir. 2016) (noting that BCBSTX, as a local plan, does not make coverage determinations for claims insured or administered by other Blue Cross and Blue Shield entities). With respect to out-of-network providers, the host or local plan facilitates claim submission and communications between the provider and the home plan. BCBSTX denies that the Host Plan determines the amount reimbursed for out-of-network services and denies the remaining allegations of the footnote.

38.     The Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because the Plaintiffs' claims, in part, arise under

Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.  The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the Plaintiffs' state law claims, which do not arise under ERISA, because those claims are part of the same case or controversy.

**ANSWER:**   BCBSTX admits that, to the extent that Plaintiffs have standing, the Court has

subject matter jurisdiction over parts of this action pursuant to 28 U.S.C. § 1331 because the

Plaintiffs' claims, in part, arise under the  Employment Retirement Income Security Act

("ERISA").  BCBSTX denies the remaining allegations in this paragraph.

39.     The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1132, because the amount in controversy exceeds $75,000, exclusive of interests and costs, and this is a suit between citizens of different states. Plaintiffs are citizens of Texas. Defendant BCBS is a citizen of Illinois, because, upon information and belief, Defendant BCBS is a Mutual Legal Reserve Company organized under the laws of the State of Illinois, with its principal place of business located in Illinois.

**ANSWER:**   BCBSTX admits that to the extent the Texas statutes and common law at issue

provide for a private right of action against BCBSTX and Plaintiffs have standing, the Court

has subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1132, because the

amount in controversy exceeds $75,000, exclusive of interests and costs, and this is a suit

between citizens of different states.  BCBSTX denies the remaining allegations in this

paragraph.

40.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and 29 U.S.C. § 1132(e)(2) because BCBS resides in this district. Venue is also proper in this district pursuant to 29 U.S.C. § 1132(e)(2), because this is the district "where the plan is administered, where the breach took place, or where a defendant resides or may be found."

**ANSWER:**   BCBSTX admits that venue is proper in this district. BCBSTX denies the

remaining allegations in this paragraph.

## FACTUAL BACKGROUND

**A.    FECs Provide Critical Emergency Care to Texas Communities.**

41.      In 2009, the Texas legislature passed the Texas Freestanding Emergency Care Facility Licensing Act, which authorized the operation of free-standing emergency centers in Texas.  Plaintiffs are free-standing emergency centers and their associated physician groups that provide the necessary emergency medical care (collectively referred to herein as "FECs").  Like traditional hospital-based emergency departments, FECs provide 24/7 access to emergency care and are fully equipped and staffed to evaluate and treat medical emergencies.  However, and as the name suggests, these independently licensed FECs differ from traditional hospital-based emergency rooms in several important respects, including, that FECs do not have to be owned by or physically attached to a hospital.

**ANSWER:** BCBSTX admits that the Texas legislature passed the Texas Freestanding

Emergency Care Facility Licensing Act but denies Plaintiffs' characterization of the statute.

BCBSTX admits that licensed freestanding emergency care facilities are not hospital-affiliated.

BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in this paragraph, which are therefore denied.

42.      FECs provide a host of benefits to the communities they serve and fill an important gap in Texas's emergency healthcare safety net.  Because FECs are not required to be located near a "parent" hospital, they can be located in and provide medical treatment and/or stabilization for any emergency to communities without a nearby hospital.  This proximity to patients saves lives: when minutes matter most, patients can receive medical treatment from a local FEC rather than traveling dozens of miles to a hospital outside of their community. Indeed, FECs are an integral part of the emergency care safety net and have provided vital services when natural disasters, such as Hurricane Harvey, or seasonal or unexpected outbreaks, such as Coronavirus, have hit Texas.

**ANSWER:** As to the Plaintiffs in this case, BCBSTX denies that Plaintiffs all serve or fill an

important gap in Texas's emergency healthcare safety net.  BCBSTX further denies the

allegations in this paragraph to the extent they suggest other in-network facilities were not

reasonably available to any of Plaintiffs' potential patients, or that all Plaintiffs are not

located near a hospital, other freestanding emergency facility or urgent care center and thus

provide more convenient or expedient options for healthcare services than potential patients

13

would otherwise have access to.  To the extent the allegations in this paragraph refer to freestanding emergency care facilities other than Plaintiffs in Texas, BCBSTX is without knowledge or information sufficient to form a belief as to the truth of these allegations, which are therefore denied.  Similarly, BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiffs' or other freestanding emergency care facilities'  involvement in care stemming from natural disasters, seasonal, or other unexpected outbreaks, and therefore denies these allegations.  BCBSTX denies the remaining allegations in this paragraph.

43.     Further, FECs provide better, patient-driven care than traditional hospitals because they are unencumbered by the typical administrative bureaucracy and other challenges burdening hospital-based emergency departments. For instance, patients at FECs experience shorter wait times than at hospital emergency rooms, despite the fact that the proportion of total emergency department visits occurring at FECs more than tripled from 2012 to 2015.  Clinical studies continue to show that shorter "door-to-physician" times and the individualized care received in FECs has resulted in clinical outcomes that are consistently better than those seen in traditional hospital emergency rooms. In fact, recent studies have shown that patients seen in an FEC can be admitted to a hospital, if necessary, faster than patients seen in the traditional emergency room attached to that same hospital. Patients seen first in an FEC experience a lower chance of readmission and better long-term outcomes than other patients and as a result, FECs consistently receive higher customer satisfaction scores.

**ANSWER:** BCBSTX is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, which are therefore denied.

44.     In short, FECs provide the communities they serve with unhindered access to emergency care while simultaneously realizing better clinical outcomes with greater efficiency and with a higher level of patient satisfaction.  Despite the clear benefits that FECs provide to their patients, including BCBS insureds, BCBS has actively tried to steer its insureds away from FECs and routinely refuses to reimburse FECs in the amounts required under state and federal law, as described below.

**ANSWER:**     BCBSTX denies the allegations in this paragraph.

**B.**     **BCBS Is Required to Provide Coverage for Emergency Services Regardless of Whether the Provider is In-Network or Out-of-Network.**

45.     BCBS, like many health insurers, contracts with healthcare providers to provide services to BCBS' insureds at pre-negotiated, discounted rates.  Known as "in-network" providers, these contractual arrangements allow healthcare providers to generate additional business as a result of their "in-network" status and allows BCBS to pay lower rates for the medical treatment received by its insureds. "Out-of-network" providers, by contrast, do not have contractual arrangements with BCBS or other health insurers and, instead, set their own charges for services. For patients, seeing an in-network provider usually costs less than going to an out-of-network provider whose services are not discounted and may not even be covered by BCBS.[2]

**ANSWER:** BCBSTX admits that it has contracts for network participation with some

healthcare providers and these providers are known as "in-network providers."  BCBSTX

admits that network participation agreements with providers typically include an agreed price

for any covered services (subject to the conditions, limitations, exclusions and other terms of

each member's underlying health insurance policy or self-funded plan).  BCBSTX also

admits that "out-of-network" providers do not have contractual network participation

agreements with BCBSTX and thus the rates these providers charge patients are not

negotiated rates but rather are set unilaterally by the provider.  BCBSTX denies the remaining

allegations in this paragraph.  With respect to the allegations contained in Paragraph 45

footnote 2, BCBSTX admits that it performs administrative services for various Texas

governmental entities, at both the state and local level, with respect to those entities' self-

funded health plans.  As to ERS claims, BCBSTX states that the Court has dismissed all ERS

claims and denies any allegations as to ERS on that basis.  *See* Order at 19, Dkt. 152.

BCBSTX denies the remaining allegations in the footnote.

46.     Most FECs around the country, including the Plaintiffs, are out-of-network providers. Although many FECs have tried to work with BCBS in good-faith attempts to

---

[2] As discussed above, BCBS also serves as an administrator for insurance plans funded by governmental entities in the State of Texas, as well as administers claims on behalf of sister Blue-Cross entities located in other states.

become in-network providers, BCBS refuses to offer the FECs, including Plaintiffs, realistic reimbursement rates that would sustain the facilities' operations. Unlike emergency departments attached to hospitals, FECs cannot offset lower reimbursement rates by admitting patients to the affiliated hospital or providing other supplemental treatment.

**ANSWER:** BCBSTX admits that Plaintiffs are out-of-network providers with BCBSTX.

BCBSTX denies that it has not offered out-of-network freestanding emergency care facilities

in Texas reasonable reimbursement rates for network participation.  BCBSTX is without

knowledge or information sufficient to form a belief as to the truth of the remainder of the

allegations of this paragraph, which are therefore denied.

47.     Thousands of BCBS members receive treatment at FECs every year. This is not surprising: patients often cannot choose their provider in an emergency situation. Patients can be unconscious or otherwise incapacitated in an emergency, and in most cases, transported to the nearest emergency facility without regard to the facility's network status.

**ANSWER:**    BCBSTX admits that many BCBSTX members have received treatment at a

freestanding emergency care facility in Texas.  BCBSTX further admits that in some

instances a patient experiencing an emergency medical condition may not have the ability to

choose where to receive emergency care, including when they are unconscious.  BCBSTX is

without knowledge or information sufficient to form a belief as to the truth of the remainder

of the allegations of this paragraph, which are therefore denied.

48.     To ensure patients always have access to emergency care, federal and state law require all emergency departments (including FECs) to treat all patients regardless of their insurance coverage or ability to pay.  Texas law requires FECs to "provide to each patient, without regard to the individual's ability to pay, an appropriate medical screening, examination, and stabilization…to determine whether an emergency medical condition exists" and "provide any necessary stabilizing treatment." 25 TEX. ADMIN. CODE § 131.46; Tex. Health and Safety Code § 254.136.

**ANSWER:**    BCBSTX denies that both state and federal law require freestanding

emergency care facilities in Texas to "treat all patients regardless of their insurance coverage

or ability to pay."  BCBSTX admits that 25 TEX. ADMIN. CODE § 131.46; Tex. Health and

Safety Code § 254.136 set forth certain requirements applicable to certain Texas healthcare

providers and that paragraph 42 contains excerpts of language from these laws.  BCBSTX

denies the remaining allegations of this paragraph.

49.     Similarly, the Federal Emergency Medical Treatment and Labor Act ("EMTALA") requires emergency physicians provide both a medical screening exam and the requisite care to individuals that present to an emergency department and request treatment or require care to stabilize their condition." 42 U.S.C. § 1395dd. Emergency care providers must provide the required screening and/or stabilization to all patients seeking care regardless of either the patient's ability or willingness to pay or the "individual's method of payment or insurance status." *Id.*  Under EMTALA, emergency care providers cannot turn away a patient based on the type of insurance the patient has or its network status. Even if the emergency care provider knows the patient's insurance carrier does not have a contract with the emergency facility (i.e., is out of network), the emergency care provider must treat and stabilize the patient.

**ANSWER:** BCBSTX admits that EMTALA speaks for itself and provides certain

requirements applicable to hospitals but denies that Plaintiffs and other Texas freestanding

emergency care facilities are governed by the statute.  BCBSTX denies the remaining

allegations of this paragraph.

50.     In turn, Texas law, federal law, and BCBS' own plans legally obligate BCBS to provide coverage for emergency medical services provided by out-of-network emergency departments like the Plaintiffs, as described below.

**ANSWER:**   BCBSTX denies that Plaintiffs are "out-of-network emergency departments."

Because Paragraph 50 does not specify the Texas law, federal law and "BCBS' own plans"

referred to, BCBSTX is without knowledge or information sufficient to form a belief as to the

truth of the remainder of the allegations of this paragraph, which are therefore denied.

BCBSTX denies the remaining allegations of this paragraph.

###### i.     *Texas law requires BCBS to reimburse FECs*

51.     Numerous Texas statutes provide financial protection to patients who require emergency care from out-of-network providers and to healthcare providers who provide emergency care to patients who may not be able to afford it out of pocket.

**ANSWER:** BCBSTX admits there are Texas statutes that are designed to protect Texas

residents from excessive out-of-network bills related to emergency care.  BCBSTX denies the

remaining allegations of this paragraph.

52.    For instance, pursuant to the Texas Insurance Code, when out-of-network services are rendered due to an emergency, insurers must "provide reimbursement for" certain "emergency care services at the preferred level of benefits until the insured can reasonably be expected to transfer to a preferred provider."  TEX. INS. CODE § 1301.155; see also TEX. INS. CODE § 1271.155(b).  The specific covered "emergency care services" include a "medical screening examination . . . that is necessary to determine whether a medical condition exists" and "necessary emergency care services, including the treatment and stabilization of an emergency medical condition."  TEX. INS. CODE §§ 1301.55(b), 1271.55(b).

**ANSWER:**  BCBSTX admits that TEX. INS. CODE § 1301.155 and TEX. INS. CODE §

1271.155 are applicable to certain types of insurance policies issued by insurers in Texas

pursuant to these chapters, which include provisions relating to certain emergency care

services, and that Paragraph 52 selectively quotes portions of those laws.  BCBSTX denies

Plaintiffs' characterization of those laws, which speak for themselves, and otherwise denies

the remaining allegations of this paragraph.

53.    The requirement that health insurers reimburse out-of-network emergency providers for services rendered applies regardless of a patient's final diagnosis.  This coverage requirement stems from the fact that the Texas Insurance Code mandates coverage for "emergency care" deemed necessary from the perspective of a layperson seeking medical care—i.e., "a medical condition of a recent onset and severity, including severe pain, that would lead a **prudent layperson** possessing an average knowledge of medicine and health to believe that the person's condition, sickness, or injury is of such a nature that failure to get immediate medical care" would place the person's health in serious jeopardy.  TEX. INS. CODE § 1301.55(a) (emphasis added).  Federal law likewise defines covered "emergency medical conditions" using a prudent layperson standard.  42 U.S.C. § 300gg-19a(b)(2)(A).

**ANSWER:**  BCBSTX admits that TEX. INS. CODE § 1301.155 is applicable to certain

types of insurance policies issued by insurers in Texas pursuant to that chapter, which

includes provisions relating to "certain emergency care services" and that Paragraph 53

selectively quotes portions of that law.  BCBSTX further admits 42 U.S.C. § 300gg-

18

19a(b)(2)(A) includes provisions relating to coverage of "emergency services" under ACA

governed health plans.  BCBSTX admits that Paragraph 53 selectively quotes portions of that

law. BCBSTX denies Plaintiffs' characterization of these laws, and otherwise denies the

remaining allegations of this paragraph.

54.      Texas law also specifies the amount that insurers must pay out-of-network
providers that provide emergency care services. The Texas Administrative Code specifies
that, when emergency services are rendered to an insured by a nonpreferred provider, "the
insurer must pay the claim, at a minimum, at the usual and customary charge for the service."
28 TEX. ADMIN. CODE § 3.3708(b). The Texas Insurance Code requires insurers to
reimburse out-of-network providers "at the **usual and customary rate** or at a rate agreed to
by the issuer and the nonpreferred provider for the provision of the services."  TEX. INS.
CODE § 1301.0053 (emphasis added); see also TEX. INS. CODE § 1271.155(a) (requiring
HMOs to "pay for emergency care performed by non-network physicians and providers at the
usual and customary rate or at an agreed rate"). The Texas Insurance Code also prohibits an
insurer or administrator like BCBS from reimbursing a provider "on a discounted fee basis
for covered services" that are provided, unless contracted to do so. TEX. INS. CODE §
1301.056(a). As previously explained, emergency services—unlike most other healthcare
services—are "covered services" by law. Importantly, under Texas law, the "usual and
customary rate" refers to the amount the provider charges for its services, not what BCBS or
another health insurer may have contracted to pay in-network providers.

**ANSWER:** BCBSTX states that 28 TEX. ADMIN. CODE § 3.3708(b) has been declared

invalid and therefore denies the allegations of this paragraph.   BCBSTX admits that TEX.

INS. CODE § 1301.0053 and TEX. INS. CODE § 1271.155 currently include provisions

relating to reimbursement of emergency care services applicable to certain types of insurance

policies issued by insurers in Texas pursuant to these chapters, which include provisions

relating to reimbursement of covered out-of-network emergency care services to be based on

the insurer's "usual and customary rate" and not the provider's charges. BCBSTX further

admits that Paragraph 54 selectively quotes portions of those laws. BCBSTX denies

Plaintiffs' characterization of those laws, which speak for themselves. BCBSTX further

denies that TEX. INS. CODE § 1301.0053 contained the quoted language during all times

relevant to this action, and denies that the quoted provision was effective prior to January 1,

2020. BCBSTX denies that TEX. INS. CODE § 1301.056(a) is applicable to Plaintiffs.

BCBSTX denies the remaining allegations of this paragraph.

55.     In addition to these statutory provisions, the Texas Prompt Pay Act protects FECs by requiring that insurers, or administrators, like BCBS, timely respond to claims from healthcare providers. Specifically, the Prompt Pay Act requires that, upon submission of a "clean claim" meeting the applicable documentation requirements of standardized claim forms prior to 95 days after the date of service, the insurer must reimburse any portion of the provider's claims that are clean and/or issue a denial for any portion the insurer will not pay, within 45 days. Although the Texas Prompt Pay Act generally applies only to in-network providers, there is an exception for out-of-network providers, like Plaintiffs, who provide emergency services.

**ANSWER:**  BCBSTX admits that the Texas Prompt Pay Act provides certain requirements

regarding timely processing of out-of-network claims for covered emergency care services

under certain insurance policies issued in Texas, provided that the claim submitted to the

insurer meets certain specified requirements.  BCBSTX denies that out-of-network providers

have any right of action under the Act. BCBSTX denies Plaintiffs' characterization of the

Act, and otherwise denies the remaining allegations of this paragraph.

### ii.     *Federal law requires BCBS to reimburse FECs*

56.     Much like Texas law, federal law requires an insurer that "provides or covers any benefits with respect to services in an emergency department of a hospital" to also cover similar "emergency services" provided by an out-of-network provider regardless of the individual's method of payment or insurance status.  42 U.S.C. §§ 300gg-19a(b)(1); 1395dd(a), (b), (e)2, (h). All BCBS plans provide coverage for emergency services.  Indeed, under the Affordable Care Act, emergency services are listed as one of the ten "essential health benefits" to be included in health insurance plans. 42 U.S.C. § 18022(b)(1).

**ANSWER:** BCBSTX admits that the ACA contains provisions regarding coverage for

certain out-of-network services provided in the emergency department of a hospital.

BCBSTX further admits that Paragraph 56 selectively quotes portions of those laws.

BCBSTX denies that the referenced provisions of the ACA and its regulations applies to

services furnished in freestanding emergency care facilities and otherwise denies the

remaining allegations of this paragraph..

57.     Federal law also sets parameters for the amount of reimbursement in these situations. Specifically, insurers must reimburse out-of-network providers at the greater of:

(A)     The amount negotiated with in-network providers for the emergency service furnished;

(B)     The amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services (such as the **usual, customary, and reasonable amount**); or

(C)     The amount that would be paid under Medicare (part A or part B of title XVII of the Social Security Act, 42 U.S.C. 1395 et seq.) for the emergency service.

26 C.F.R. § 54.9815-2719AT(b)(3); 29 C.F.R. § 2590.715-2719A(b)(3) (emphasis added); 45 C.F.R. § 147.138(b)(3).

**ANSWER:** BCBSTX admits that for plan years through December 31, 2021, 45 C.F.R. § 147.138(b)(3) required ACA qualified health plans to provide benefits for covered out-of-network emergency services provided in the emergency department of a hospital at the greatest of three specified amounts.  BCBSTX denies that Paragraph 57 accurately describes the calculation of those three amounts and denies that the regulation requires reimbursement of out-of-network emergency services to be based on the "usual, customary, and reasonable amount."  BCBSTX denies that this regulation applies to services furnished in freestanding emergency care facilities and otherwise denies the remaining allegations of this paragraph.

### iii.     *The BCBS Plans require BCBS to reimburse FECs*

58.     Consistent with the requirements imposed by Texas and federal law, BCBS plans and plans administered by BCBS provide their insureds with coverage for "Emergency Care," defined as:

> health care services provided in a Hospital emergency facility, **freestanding emergency medical care facility**, or comparable facility to evaluate and stabilize medical conditions of a recent onset and severity, including but not limited to severe pain, that would lead a **prudent layperson**, possessing an average knowledge of medicine and health, to believe that his condition, sickness, or injury is of such a nature that failure to get immediate medical care could result in: placing the patient's health in serious jeopardy; serious impairment to bodily

21

functions; serious dysfunction of any bodily organ or part; serious disfigurement; or in the case of a pregnant woman, serious jeopardy to the health of the fetus.

**ANSWER:**  BCBSTX denies the allegations of this paragraph.

59.     Unlike with normal out-of-network services, the BCBS Plans expressly provide for insurance coverage to their members who receive Emergency Care from an out-of-network provider, such as Plaintiffs. For instance, BCBS PPO Plans state that they "provide[] coverage for medical emergencies wherever they occur." The HMO Plans state that "Emergency Care services whether rendered by a Participating or non-Participating Providers [sic] will be covered, based upon the signs and symptoms presented at the time of treatment."

**ANSWER:** BCBSTX admits that BCBSTX has issued PPO and HMO plans in Texas that include coverage for certain defined emergency care.  BCBSTX denies that all health plans for which BCBSTX is the claims administrator define coverage for emergency care as set forth in this paragraph.  BCBSTX further denies that Plaintiffs' partial quotation of language from certain BCBSTX PPO and HMO health plans accurately states the parameters of coverage under those health plans.  BCBSTX denies the remaining allegations of this paragraph.

60.     The BCBS PPO Plans require reimbursement of out-of-network emergency care providers, like Plaintiffs, at the same percentage of the Allowable Amount as an in-network provider. The Allowable Amount for emergency care is set at "the usual or customary amount as defined by Texas law or as prescribed under applicable law or regulations."

**ANSWER:** BCBSTX denies the allegations in this paragraph.

61.     Similarly, the BCBS HMO Plans provide that for out-of-network emergency care providers, like Plaintiffs, the Allowable Amount shall be the greatest of the following rates: (1) the median amount negotiated with Participating Providers for Emergency Care services furnished; (2) the amount for the Emergency Care service calculated using the same method the Plan generally uses to determine payments for non-Participating Provider services by substituting the Participating Providers cost-sharing provisions for the non-Participating Providers cost sharing provisions; (3) the amount that would be paid under Medicare for the Emergency Care; or (4) the agreed rate, or the usual and customary rate.

**ANSWER:** BCBSTX admits that BCBSTX has issued HMO plans in Texas that include

coverage for certain defined emergency care.  BCBSTX denies that all HMO health plans for

which BCBSTX is the claims administrator define coverage for emergency care as set forth

in this paragraph.  BCBSTX further denies that Plaintiffs' partial summary of language from

a certain BCBSTX HMO health plan accurately states the parameters of coverage under those

health plans.  BCBSTX denies the remaining allegations of this paragraph.

### iv.   *The "usual and customary rate"*

62.     The "usual and customary rate" under Texas law—which is also generally the highest under the federal "greater of three" standard—is an amount that is based on what providers in the same geographic area usually charge for the same or similar service.  Texas law requires that insurers and/or administrators calculate the "usual and customary rate" based on "generally accepted industry standards and practices for determining the customary billed charge for a service and that fairly and accurately reflects market rates, including geographic differences in cost."  28 TEX. ADMIN. CODE § 3.3708(c)(1).

**ANSWER:** BCBSTX denies the allegations in this paragraph.

63.     However, insurers and/or their administrators often make their own decision about what they believe a "usual and customary rate" is without disclosing the data or rationale underlying that decision.  Upon information and belief certain insurers, including BCBS have purported to use Medicare rates to calculate what is usual and customary. But, as the TDI has noted, the Medicare rates are "not based on billed charges or usual and customary data." Texas Department of Insurance, Usual and Customary Survey at 10-11 (Revised Jan. 2017).

**ANSWER:** BCBSTX admits that the "usual and customary rate" as used in Texas statutes

applicable to Texas insured health plans refers to the insurer's usual and customary rate of

reimbursement, as determined by the insurer.  BCBSTX admits that for certain periods of

time and for certain Texas insured health plans, BCBSTX determined the usual and

customary rate with reference to Medicare rates where applicable.  BCBSTX further admits

that the Texas Department of Insurance survey referred to in this paragraph recognized the

use of Medicare rates to determine reimbursement for out-of-network services under

insurance policies governed by the Texas Insurance Code.  BCBSTX denies the remaining

allegations in this paragraph.

64.     Nonetheless, there are a several independent, conflict-free third parties that provide information regarding usual and customary rates. The most prominent of these third parties is FAIR Health—an independent nonprofit that collects data for and manages the nation's largest database of privately billed health insurance claims.  FAIR Health cost estimates are based on provider charge data submitted in claims by those providers for the payment of medical services rendered to their patients that have private insurance plans, including the country's largest insurers. In total, FAIR Health maintains a database of more than 27 billion claims and adds nearly 1.7 billion new claims every year. The Texas Department of Insurance has recognized FAIR Health data as "geographically adjusted, updated every six months, and based on non-discounted billed charges." *Id*. at 11.

**ANSWER:** BCBSTX denies that FAIR Health publishes a "usual and customary rate"

product.  BCBSTX admits that it is aware that FAIR Health collects data and manages

various databases of privately billed health insurance claim information.  BCBSTX further

admits that paragraph 64 accurately quotes from the Texas Department of Insurance January

2017 Usual and Customary Survey.  BCBSTX is without knowledge or information sufficient

to form a belief as to the truth of the remainder of the allegations of this paragraph, which are

therefore denied.

65.     As a result, when attempting to set the prices for the emergency services they render, many FECs use a methodology that utilizes FAIR Health's charge database (or a similar resource) to determine what similarly situated providers in their geographical location customarily charge for a specific service at a particular point in time.

**ANSWER:** BCBSTX is without knowledge or information sufficient to form a belief as to

the allegations of this paragraph, which are therefore denied.

**C.    BCBS' Numerous Schemes to Underpay Emergency Medical Providers**

66.     BCBS has repeatedly ignored its obligations under Texas law, federal law, and the terms of its own plans to timely provide coverage at the usual and customary rate for BCBS members who present for emergency care at FECs, including Plaintiffs.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

67.     Plaintiffs have treated tens of thousands of patients insured by BCBS (or its sister Blue-Cross entities in other states), or insured by plans administered by BCBS, and

accordingly billed BCBS for services provided to these patients. Plaintiffs' total charges for these claims reflect the usual and customary fees for their particular geographical region for the particular medical services provided at those facilities.

**ANSWER:** BCBSTX admits that Plaintiffs have submitted thousands of claims to BCBSTX

in connection with services purportedly furnished to Blue Cross and/or Blue Shield members.

Defendant denies that Plaintiffs' total charges reflect the usual and customary rates in their

geographic markets.  BCBSTX denies the remaining allegations of this paragraph.

68.     However, to date, BCBS has only paid a fraction of the amount it is legally required to provide for these claims. Indeed, for some patients who received treatment at FECs, BCBS provided zero coverage as they have threatened to do in various press releases. *See* https://www.houstonpublicmedia.org/articles/news/2018/06/04/288825/blue-cross-blue-shield-of-texas-delays-controversial-change-after-backlash/.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

69.     After deducting charges that are the patients' responsibility under the BCBS Plans—i.e., copayments, coinsurance, and deductibles—BCBS has failed to pay hundreds of millions of dollars in usual and customary charges for emergency medical claims provided by Plaintiffs during the relevant period.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

70.     In theory, when a patient is experiencing medical symptoms, there is a simple two-step process to seek treatment in a potential emergency scenario.  First is application of the prudent layperson standard:  Would an average knowledge of medicine and health to believe that the person's condition, sickness, or injury is of such a nature that failure to get immediate medical care would place the person's health in serious jeopardy?  If so, then they should seek care without delay.  Second, if the emergency care provider is out-of-network, then the provider should be reimbursed pursuant to the greater-of-three requirement, i.e. the usual and customary rate for the services provided in that locale.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

71.     However, BCBS has attacked what should otherwise be a relatively simple process on both fronts and has engaged in a systematic scheme designed to underpay, not pay, or delay payment to emergency health-care providers, like Plaintiffs. BCBS regularly covers only a fraction of the charges for the services provided to patients with plans provided or administered by BCBS at FECs, services which are billed out at the usual and customary rate.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

72.     BCBS' reimbursement methods are not transparent, not based on peer-to-peer costs, and are inconsistent with the benchmark rates reported by FAIR Health, which the Texas Department of Insurance ("TDI") has looked to in defining what is usual and customary. In fact, BCBS refuses to explain how it arrives at its allowable amounts, even when specifically asked by providers trying to settle claims.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

73.     BCBS has used multiple schemes to underpay for services provided by FECs, like Plaintiffs, in what appears to be a systematic effort to drive freestanding emergency rooms out of business.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

74.     First, BCBS has often refused to pay claims at the amounts required by the terms of the BCBS Plans and applicable law under the guise of the false, vague, and nonsensical representation that the "Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement." Plaintiffs, as assignees of BCBS member claims, regularly receive explanation of benefit forms ("EOB") containing that reason for nonpayment together with the corresponding claim adjustment code "PR-45."

**ANSWER:** BCBSTX denies the allegations in this paragraph.

75.     The PR-45 code allows BCBS to avoid payment of billed charges without technically denying the claims, but instead "allowing" the claim for zero dollars or a fraction of the billed amount. Accordingly, for many FECs, including Plaintiffs, the severe underpayment is not automatically flagged because the claims show up as "paid" rather than "denied."

**ANSWER:** BCBSTX denies the allegations of this paragraph.

76.     BCBS knows, or at the very least should know, that these representations are false: BCBS has no "contracted" rate with FECs, like Plaintiffs, and there is no "legislated" fee arrangement beyond the reasonable-and-customary and greater-of-three requirements discussed above, which are reflected in Plaintiffs' charges. BCBS has regularly paid claims at rates other than what is usual and customary.

**ANSWER:** BCBSTX admits it has no contract with Plaintiffs.  BCBSTX otherwise denies

the allegations in this paragraph.

77.     BCBS has regularly utilized the PR-45 code to pay claims at rates other than what is usual and customary. For example, BCBS member R.S. presented to an FEC, Plaintiff America's ER Site 001, LLC, on January 6, 2019 with abdominal pain and was ultimately diagnosed with pancreatitis, an elevated white blood cell count, hypertension, and abnormal liver production. While at the FEC, R.S. received a CT scan of the abdomen, underwent lab

work, received numerous IV treatments and medications, and was held under emergency room observation at a Level 4 visit for four hours. The charges for the care, which were billed out at the usual and customary rate, were $11,099.20. Yet BCBS, under the guise of the "PR-45" code, refused to reimburse anything thus leaving its insured R.S. responsible for the entire bill. BCBS cannot maintain that zero dollars was the usual and customary rate for services in this clearly emergent situation.

**ANSWER:**  BCBSTX is without knowledge or information sufficient to form a belief as to

the allegations regarding the unidentified insurance claim referred to in this paragraph, and

therefore denies those allegations.  BCBSTX otherwise denies the allegations in this

paragraph.

78.      Likewise, a BCBS member named L.G. presented to a FEC, Plaintiff America's ER Site 001, LLC, on November 17, 2018 for treatment. She was diagnosed, received a CT scan, and was held under observation for six hours. The charges for the care, which were billed out at the usual and customary rate, totaled $22,829.05. But BCBS only paid $990.00—i.e., **four percent of the charges**—leaving L.G. (BCBS's insured) liable to pay the remaining $21,839.05. BCBS did not contest that there was an emergency or that the treatment was medically necessary; instead, it arbitrarily stated that the charged rates exceeded BCBS's maximum fee schedule.  This behavior clearly violates both state and federal law and harms not only the FECs and their associated physicians groups, but also BCBS' patients.

**ANSWER:** BCBSTX denies that it violated state or federal law, and that it harmed

freestanding emergency care facilities, physician groups or patients.  BCBSTX is without

knowledge or information sufficient to form a belief as to the allegations regarding the

unidentified insurance claim referred to in this paragraph, and therefore denies the remaining

allegations of this paragraph.

79.      Similarly, BCBS' insured M.J. presented at an FEC, Plaintiff Excel ER Physicians East Texas PLLC, with extreme chest pain and was ultimately diagnosed with pneumonia and pleurisy after an EKG and chest x-ray.  The FEC submitted a claim to BCBS for $1,638.40, which was billed at the usual and customary rate consistent with the Fair Health database for those services. Nonetheless, BCBS only agreed to reimburse $82.72, an amount far more consistent with the Medicare rate than with the usual and customary rate charged.

**ANSWER:** BCBSTX is without knowledge or information sufficient to form a belief as to

the allegations regarding the unidentified insurance claim referred to in this paragraph, and

therefore denies the allegations of this paragraph.

80.     BCBS' insured C.W. presented at an FEC, Plaintiff Piney Woods ER III, LLC, for severe pain and swelling in the hand and following an x-ray was placed in a splint.  The FEC submitted a claim to BCBS for $2,104.53, which was billed at the usual and customary rate consistent with the Fair Health database for those services. Nonetheless, BCBS only agreed to reimburse $71.32, an amount far more consistent with the Medicare rate than with the usual and customary rate charged.

**ANSWER:** BCBSTX is without knowledge or information sufficient to form a belief as to

the allegations regarding the unidentified insurance claim referred to in this paragraph, and

therefore denies the allegations of this paragraph.

81.     Likewise, BCBS' insured J.H. presented at an FEC, Plaintiff Piney Woods ER I, LLC, for severe abdominal pain and intractable vomiting and was ultimately diagnosed with a urinary tract infection, dehydration and renal atrophy following blood work, urinalysis, a CT scan and IV fluids and medication. The FEC submitted a claim to BCBS for $21,497.05, which was billed at the usual and customary rate consistent with the Fair Health database for those services. Nonetheless, BCBS only agreed to reimburse $801.02, an amount far more consistent with the Medicare rate than with the usual and customary rate charged.

**ANSWER:** BCBSTX is without knowledge or information sufficient to form a belief as to

the allegations regarding the unidentified insurance claim referred to in this paragraph, and

therefore denies the allegations of this paragraph.

82.     These are just examples of BCBS's systematic effort to underpay.  BCBS has similarly underpaid all Plaintiffs.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

83.     In these instances, BCBS puts the FEC in a bind between charging (and alienating) their patients or taking the hit and receiving nothing for the services provided. BCBS does not explain why the FEC facilities charges exceeded a "legislated fee arrangement" or how BCBS calculates its own rate. Rather, BCBS' PR-45 representations are false, and do not comply with Texas Insurance Code or ERISA regulations requiring insurers and/or administrators to state the specific and/or actual reasons for refusing to pay claims.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

84.     Second, upon information and belief, BCBS has used a reimbursement

methodology based on Medicare rates to underpay claims for services billed out at usual and customary rates. Medicare rates are not usual and customary and are not even sufficient for FECs, like Plaintiffs, to maintain a viable business.

**ANSWER:** BCBSTX is without knowledge or information sufficient to form a belief as to

the allegations regarding Plaintiffs' operating costs, and therefore denies the same. BCBSTX

denies the remaining allegations in this paragraph.

85.     As discussed above, Medicare rates are "not based on billed charges or usual and customary data," as the TDI has recognized. BCBS' use of Medicare rates in calculating reimbursements fails to account for "industry standards and practices" and fails for determining the customary billed charge for a service that fairly and accurately reflects market rates, including geographic differences in cost.

**ANSWER:** BCBSTX admits that paragraph 85 accurately quotes from a January 2017 Texas

Department of Insurance publication that found that many Texas insurers properly utilized

Medicare rates to determine reimbursement for covered out-of-network emergency care.

BCBSTX denies the remaining allegations in this paragraph, including Plaintiffs'

characterizations of the Texas Department of Insurance's findings.

86.     There are numerous instances of BCBS using what appears to be Medicare rates to pay claims at non-usual and customary rates. For instance, when BCBS's insured M.K. received treatment at an FEC, Plaintiff America's ER Site 001, LLC, for persistent asthma with acute exacerbation, the FEC submitted a claim to BCBS for $3,156.32, which was billed at the usual and customary rate consistent with the Fair Health database for those services. Nonetheless, BCBS only agreed to reimburse $486.57, an amount far more consistent with the Medicare rate than with the usual and customary rate charged.

**ANSWER:** BCBSTX denies that it determined reimbursement for covered out-of-network

emergency care at rates other than the usual and customary rate where required under the

Texas Insurance Code.  BCBSTX further denies that the usual and customary rate, as

established by the Texas Insurance Code as interpreted by the Texas Department of

Insurance, may not be set by an insurer with reference to Medicare rates. BCBSTX further

denies that the "usual and customary rate," a statutory term that applies to certain insured

health plans issued in Texas, requires reimbursement based on a provider's billed charges.

BCBSTX is without knowledge or information sufficient to form a belief as to the allegations

regarding the unidentified insurance claim referred to in this paragraph, and therefore denies

the allegations of this paragraph.

87.      BCBS' practice of using Medicare rates to determine its reimbursement amounts contravenes the terms of the BCBS Plans and applicable law and deprives FECs, like Plaintiffs, of the payment for the services provided to patients with plans provided or administered by BCBS.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

88.      Third, BCBS has instituted systematic internal systems such as the "peer-to-peer review system" and the so called "Emergency Benefit Management" review process as mechanisms to specifically delay and avoid reimbursement to Plaintiffs.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

89.      Specifically, BCBS regularly responds to claims from FECs by sending letters requesting that the treating physician set up a meeting with a BCBS hired doctor to explain the medical necessity of the treatment provided. BCBS provides the FEC with ten days to respond or else forfeit the right to appeal. But the FECs often do not receive the letters in time to respond, and the treating physicians—whose job is to treat patients in emergency situations—often do not have the time to spend their day communicating with insurers. To make matters worse, BCBS refuses to allow coding experts from the FECs to participate in the "peer-to-peer" meetings.

**ANSWER:** BCBSTX is without knowledge or information sufficient to form a belief as to

how Plaintiffs manage their correspondence and the amount of time Plaintiffs' physicians

spend on administrative tasks and on treating patients, and therefore denies these allegations.

BCBSTX denies the remaining allegations of this paragraph.

90.      Additionally, the EBM review process has resulted in more than 80% of claims examined by the TDI to not be timely processed.  As a result of this and other failures by BCBS related to the processing of emergency care claims, the TDI fined BCBS $10.0 million in the form of an administrative penalty on March 6, 2020 and ordered it to pay restitution.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

### D.    Plaintiffs Have Exhausted Their Remedies

91.    Plaintiffs have complied with all conditions precedent to bringing this lawsuit, including exhaustion of administrative remedies. For the claims at issue in this lawsuit, Plaintiffs have either filed appeals to BCBS or else declined to because doing so would be futile.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

92.    When Plaintiffs have filed appeals to BCBS, BCBS has routinely denied the appeal without any substantive explanation or simply failed to respond to the appeal at all. Specifically, BCBS has failed or refused to provide: written notice of benefit determination within ninety days of claim submission; the specific reasons for denying the claim; the specific plan provisions relied on to support the denials; or the specific rule or guideline relied on to make the denial decision as required by 9 CFR § 2560.503-1(g). Likewise, BCBS has refused to provide supporting documentation or explain how it arrives at its reimbursement rates.  As a result, administrative remedies are deemed exhausted "in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section."  *See* 29 CFR § 2560.503-1(l).

**ANSWER:** BCBSTX denies the allegations in this paragraph.

93.    As far as Plaintiffs' are aware, in all of the appealed cases by Plaintiffs, BCBS has yet to reverse its decision and pay the FEC at the usual and customary rate for the services provided as reflected in the billed amount, consistent with the FAIR Health database. This demonstrates the futility of the appeals process and is clear evidence of the bias and hostility of BCBS and its review committee against FECs, including Plaintiffs.

**ANSWER:** BCBSTX denies that the "usual and customary rate," a statutory term that applies

to certain insured health plans issued in Texas, requires reimbursement based on a provider's

billed charges.  BCBSTX denies the remaining allegations in this paragraph.

94.    BCBS' tactics have prevented Plaintiffs from engaging in an actual and good faith appeals process necessary to obtain reimbursement at the usual and customary rate required by both ERISA and Texas state law. In cases where the internal appeal process may not have been exhausted, full exhaustion is excused because the appeals process would be futile. A review of Plaintiffs' own appeals history clearly demonstrates that in 100% of the claims actually appealed, BCBS failed to reimburse Plaintiffs at the usual and customary rate as reflected by the Fair Health database.  As such, the actions of BCBS clearly demonstrate actual bias and hostility towards FECs.

**ANSWER:** BCBSTX denies that ERISA requires reimbursement based on a "usual and

customary rate."  BCBSTX denies that the "FAIR Health database" referred to in this

paragraph contains a published "usual and customary rate."  BCBSTX denies the remaining

allegations in this paragraph.

**E.     Plaintiffs Have Suffered Significant Damages**

95.     The negative financial impact of BCBS' has been devastating to Plaintiffs'
businesses.  BCBS has launched an aggressive, targeted campaign against FECs in an attempt
to put the industry out of business.  For example, BCBS has adjusted its patient co-pays to
discourage their use.  BCBS has sent false benefit information in an effort to confuse and
scare patients away from FECs.  Combined with the systematic underpayment of claims and
delayed payment of claims, the financial stress BCBS is attempting to exert on FECs is
significant.

**ANSWER:** BCBSTX denies the allegations in this paragraph.

96.     Both the percentage of billed charges paid by BCBS as well as total patients
visits has been in steady decline over the past four years as a result of BCBS' efforts.  As a
result, many FECs such as Plaintiffs Piney Woods ER III, LLC and Piney Woods ER I, LLC
have ceased operations.  Many more FECs have also closed operations.

**ANSWER:** BCBSTX is without knowledge or information sufficient to form a belief as to the

truth of the allegations in this paragraph regarding the number of patients who obtain services

from Plaintiff and why, and thus BCBSTX denies those allegations.  BCBSTX admits Piney

Woods ER III, LLC and Piney Woods ER I, LLC have ceased operations.  BCBSTX denies

the remaining allegations in this paragraph.

97.     As a result, Plaintiffs seek damages in the following amount:  The usual and
customary charges billed for all emergency services provided less any required patient co-
pays or deductible les required by the applicable plan, less any amount previously reimbursed
by BCBS to Plaintiffs.

**ANSWER:** BCBSTX admits that Plaintiffs purport to seek damages but denies they have

incurred damages and that they have any entitlement to relief.

98.     In addition, Plaintiffs seek all other applicable damages including treble
damages, penalties, interest, attorneys' fees, etc. provided under Texas state or federal law.

**ANSWER:** BCBSTX admits that Plaintiffs purport to seek damages but denies they have

incurred damages and that they have any entitlement to relief.

## CLAIMS FOR RELIEF

99.     The underlying health insurance plans provided and/or administered by BCBS (including the plans of BCBS's sister entities in other states that are administered by BCBS in Texas) can be divided into two categories:  self-funded ERISA plans fully funded by the underlying employer that are subject to federal preemption and those plans that are not self-funded ERISA plans.

**ANSWER:**     BCBSTX admits that it is the contracted claims administrator for certain self-funded, ERISA-governed plans.  BCBSTX further admits that ERISA preempts certain state laws with respect to employer sponsored health plans.  BCBSTX denies that Plaintiffs' claims may be categorized in the manner alleged in this paragraph.  BCBSTX denies the remaining allegations in this paragraph.

100.     There is no mechanism for an FEC to determine whether a particular plan is a self-funded ERISA plan or not based upon the plan group number.  By contrast, BCBS is the holder of the information necessary to determine whether or not the plan governing a particular claim for reimbursement made by the Plaintiffs is a self-funded ERISA plan or not. As a result, BCBS alone can determine what underlying plan governs.

**ANSWER:**     BCBSTX denies the allegations in this paragraph.

### Count One: Violations of ERISA Payment Obligations

101.     The allegations set forth above are re-alleged and incorporated as if set forth fully herein.

**ANSWER:**     BCBSTX incorporates its answers and denials to the preceding allegations as if set forth herein.

102.     This is a claim to recover benefits, enforce rights, and clarify rights to benefits under section 502 of ERISA, with respect to BCBS Plans that are "welfare benefit plans" to which ERISA applies. Section 502 allows a participant or beneficiary covered by a welfare plan to sue to "recover benefits due . . . under the terms of his plan, to enforce rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

**ANSWER:**     BCBSTX admits that Plaintiffs have asserted a cause of action under 29 U.S.C. § 1132(a)(1)(B) but denies that Plaintiffs are participants or beneficiaries under

ERISA and that they have pleaded an entitlement to relief under that statutory provision.

BCBSTX further denies that Plaintiffs have the right, by assignment or otherwise, to seek

clarification of future benefits due to participants and beneficiaries of ERISA-governed health

plans.  BCBSTX denies the remaining allegations of this paragraph.

103.     Plaintiffs are the assignees of health care benefits to which patients with plans provided or administered by BCBS are entitled under ERISA plans. Therefore, Plaintiffs are entitled to recover benefits due under the terms of BCBS Plans. Plaintiffs have standing as a participant or beneficiary pursuant to assignments to assert the claims of their assignors against BCBS.

**ANSWER:**     BCBSTX is without knowledge or information sufficient to form a belief as to

whether any participant or beneficiary under an ERISA-governed health plan for which

BCBSTX was the contracted claims administrator attempted to assign his or her rights, if any,

to Plaintiffs, and therefore denies the same.  BCBSTX denies the remaining allegations of

this paragraph.

104.     BCBS either serves as the named plan administrator or the designated plan administrator's "designee" for the various ERISA plans at issue or exercises discretion and control over the payment of plan benefits.

**ANSWER:**     Because the Third Amended Complaint does not identify which health plans

are alleged to be governed by ERISA, BCBSTX is without knowledge or information

sufficient to form a belief as to as to the allegations concerning BCBSTX exercising

discretion over the payment of plan benefits, and therefore denies the same.  BCBSTX denies

the remaining allegations of this paragraph.

105.     As the exemplar plans discussed above demonstrate, BCBS Plans provide that BCBS will reimburse out-of-network emergency services at specified levels. For instance, the exemplar BCBS PPO Plan sets the Allowable Amount for emergency care at "the usual or customary amount as defined by Texas law or as prescribed under applicable law or regulations." And the exemplar BCBS HMO Plan sets the Allowable Amount for emergency care at the greatest of four rates, which includes the "usual and customary rate."

**ANSWER:**     BCBSTX denies that the Third Amended Complaint contains any ERISA-

governed health plan exemplars for which BCBSTX was the contracted claims administrator

and therefore denies the allegations in this paragraph.

106.    BCBS has violated the plain terms of the BCBS Plans and abused its
discretion in administration of the plans at issue by significantly underpaying claims for the
out-of-network services provided to patients by Plaintiffs.  BCBS has failed to remit payment
for those claims at the usual and customary level that its plans require.

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

107.    BCBS has also violated the ACA's greater-of-three requirement by failing to
provide benefits for emergency care in an amount at least equal to the greatest of: (1) amount
negotiated with in-network providers; (2) the amount for the emergency service calculated
using the same method the plan generally uses to determine payments for out-of-network
services (such as the usual, customary, and reasonable amount); and (3) the amount paid
under Medicare.  *See* 45 CFR § 147.138(b)(3). The greater-of-three requirement is
enforceable via a claim for ERISA benefits under section 502(a)(3) of ERISA. See 29 U.S.C.
§ 1132(a)(3); 29 U.S.C. § 1185d(a)(1).

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

108.    Plaintiffs have exhausted their administrative remedies under the ERISA plans
at issue. For the underpaid claims that are subject to ERISA, Plaintiffs either submitted timely
written appeals to BCBS pursuant to 29 U.S.C. § 1133, or are excused from exhausting their
administrative remedies because BCBS failed to follow claims procedures required by
ERISA and its implementing regulations. See 29 C.F.R. § 2560.503-1. Alternatively,
exhaustion of administrative remedies was not required because it was futile as demonstrated
by the bias and hostility of BCBS and its review committee against FECs.

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

109.    BCBS' conduct constitutes a breach of the ERISA plans and an abuse of
discretion. Such conduct has denied Plaintiffs benefits to which they are entitled. Under the
terms of the BCBS Plans, BCBS members are entitled to a benefit consisting of coverage for
emergency care and payment consistent with the plan document and other legal requirements.

**ANSWER:**    BCBSTX admits that members of ERISA-governed plans for which BCBSTX

serves as the contracted claims administrator are entitled to coverage consistent with the

terms of their health plans.  BCBSTX denies the remaining allegations in this paragraph.

110.    BCBS' failure to pay Plaintiffs what it was obligated to pay for the emergency
care provided to patients was motivated by BCBS' desire to achieve maximum profits and
constitutes a conflict of interest and bad faith.

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

111.    As assignee of the benefits to which patients with plans provided or administered by BCBS are entitled pursuant to their ERISA Plans, Plaintiffs are entitled to the recovery of benefits and all other relief due pursuant to 29 U.S.C. § 1132(a)(1)(B).

**ANSWER:**    BCBSTX is without knowledge or information sufficient to form a belief as to whether any alleged assignors were entitled to benefits under an ERISA-governed health plan for which BCBSTX was the contracted claims administrator, and therefore denies the same. BCBSTX is without knowledge or information sufficient to form a belief as to whether any participant or beneficiary under an ERISA-governed health plan for which BCBSTX was the contracted claims administrator assigned his or her rights, if any, to Plaintiffs, and therefore denies the same.  BCBSTX denies the remaining allegations of this paragraph.

### Count Two: Breach of Contract

112.    The allegations set forth above are re-alleged and incorporated as if set forth fully herein.

**ANSWER:** BCBSTX incorporates its answers and denials to the preceding allegations as if set forth herein.

113.    Plaintiffs provided medically necessary emergency services to BCBS members enrolled in plans and/or insurance contracts that are not covered by ERISA. BCBS members assigned their benefits under these plans and/or insurance contracts to the Plaintiffs. Plaintiffs, therefore, have standing in their capacity as assignee to enforce the terms of the non-ERISA BCBS Plans.

**ANSWER:** BCBSTX is without knowledge or information sufficient to form a belief as to whether any enrollees or beneficiaries of BCBSTX-issued insurance contracts assigned his or her rights, if any, to Plaintiffs, and therefore denies the same.  BCBSTX is without knowledge or information sufficient to form a belief as to whether Plaintiffs furnished "emergency services" to such enrollees or beneficiaries of BCBSTX-issued insurance

contracts, or whether such services were medically necessary, and therefore denies the same. BCBSTX denies the remaining allegations of this paragraph.

114.    Pursuant to BCBS Plans, BCBS agreed to pay out-of-network providers, such as Plaintiffs, using a specified payment methodology (usually the usual and customary rate). Plaintiffs provided covered services to BCBS insureds, and those insured assigned their insurance contract benefits to Plaintiffs.

**ANSWER:** BCBSTX is without knowledge or information sufficient to form a belief as to

whether any enrollees or beneficiaries of BCBSTX-issued insurance contracts assigned his or

her rights, if any, to Plaintiffs, and therefore denies the same.  BCBSTX is without

knowledge or information sufficient to form a belief as to whether Plaintiffs furnished

"covered services" to such enrollees or beneficiaries of BCBSTX-issued insurance contracts,

and therefore denies the same.  BCBSTX denies the remaining allegations of this paragraph.

115.    Plaintiffs submitted claims to BCBS for payment for medically necessary emergency services. However, BCBS failed to pay Plaintiffs in accordance with the terms of the insurance contracts.

**ANSWER:**    BCBSTX admits that Plaintiffs submitted claims for reimbursement to

BCBSTX from time to time.  BCBSTX is without knowledge or information sufficient to

form a belief as to whether Plaintiffs furnished "emergency services" to enrollees or

beneficiaries of BCBSTX-issued insurance contracts, or whether such services were

medically necessary, and therefore denies the same.  BCBSTX denies the remaining

allegations of this paragraph.

116.    BCBS' failure to pay the Plaintiffs at the amounts required by the BCBS Plans constitutes a breach of contract.

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

117.    As a direct and proximate result of BCBS' breaches of contract, Plaintiffs have been damaged in an amount in excess of the jurisdictional floor of the Court. Plaintiffs are entitled to full payment due from BCBS.

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

## Count Three: Bad Faith Insurance Practices

118.    The allegations set forth above are re-alleged and incorporated as if set forth fully herein.

**ANSWER:**    BCBSTX incorporates its answers and denials to the preceding allegations as

if set forth herein.

119.    As the insurer of fully insured policies, BCBS owed a duty of good faith and fair dealing to its insureds under the insurance policies. Plaintiffs are the assignees and beneficiaries for each of the insurance policies at issue.

**ANSWER:**    BCBSTX is without knowledge or information to form a belief as to whether

any enrollee or beneficiaries of BCBSTX-issued insurance contracts assigned his or her

rights, if any, to Plaintiffs, and therefore denies the same.  BCBSTX denies the remaining

allegations in this paragraph.

120.    BCBS breached its duty by failing to provide full payment on Plaintiffs' assigned insurance claims when BCBS' liability was reasonably clear. Moreover, to the extent BCBS conducted "investigations" to make coverage determinations, such "investigations" were merely a pretext to deny full coverage. Such conduct constitutes bad faith and has proximately caused damages to Plaintiffs as the assignee and beneficiary of the fully insured plans issued by BCBS.

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

121.    Plaintiffs are entitled to recovery of actual, economic damages, as well as exemplary damages, pre-judgment and post-judgment interest, and attorneys' fees.

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

## Count Four: Negligent Misrepresentation

122.    The allegations set forth above are re-alleged and incorporated as if set forth fully herein.

**ANSWER:**    BCBSTX incorporates its answers and denials to the preceding allegations as

if set forth herein.

123.     Throughout the claims process, BCBS—either as an insurer, third-party administrator, or "Host Plan" to its sister Blue-Cross entities in other states—would provide numerous representations to Plaintiffs as an assignee of the insureds' claims. Specifically, BCBS would provide explanation of benefits ("EOBs") stating its reason for not providing full reimbursements on the insureds' claims. Additionally, when Plaintiffs or their agents appealed BCBS' coverage determinations, BCBS would sometimes provide additional representations explaining the purported reasons for which it was denying coverage. These representations were made to guide the insureds and their beneficiaries in seeking insurance benefits.

**ANSWER:**     BCBSTX states that the Third Amended Complaint fails to identify any

specific claim, denial, representation or appeal and therefore  BCBSTX is without knowledge

or information sufficient to form a belief as to the truth of the allegations in this paragraph,

which are therefore denied.  BCBSTX otherwise denies the allegations in this paragraph.

124.     The representations that BCBS made to Plaintiffs (as assignees of the insureds' claims) were repeatedly false.  By way of example, BCBS often represented that it was denying coverage because:

- there was no "medical necessity" for the medical care the insured received, when, in fact, a prudent layperson possessing an average knowledge of medicine and health would have reason to believe emergency medical care was needed;

- the insured sought reimbursements that "overcharged" BCBS or were inconsistent with the usual and customary rates, when, in fact, the reimbursements sought were consistent with the usual and customary rates;

- the insured failed to undertake a "coordination of benefits" by notifying BCBS of other insurance coverage, when, in fact, a failure to coordinate benefits would not have relieved BCBS' obligation to provide coverage;

- the submitted claims had "coding" or "billing" errors, when such errors did not exist or were not a basis for denying coverage;

- the submitted claims were inconsistent with the insurance policy, when, in fact, they were not and the Texas Insurance Code required payment on the claims.

**ANSWER:**     BCBSTX denies the allegations in this paragraph.

125.     Upon information and belief, BCBS did not exercise reasonable care or competence in communicating this information to the insureds and their beneficiaries. Rather, BCBS would simply put down stock responses or provide EOBs that had no connection to the claims or no basis under the plans. On information and belief, and as demonstrated by BCBS'

public campaigns against FECs, BCBS often made these representations knowing they were inaccurate and with the intent to deprive Plaintiffs of the ability to obtain full payment for the services they provided.

**ANSWER:**    BCBSTX  denies the allegations in this paragraph.

126.    Plaintiffs (as assignees of the insureds' claims) relied on BCBS' misrepresentations in attempting to determine coverage information for their patients. Based on the misrepresentations, Plaintiffs were unable to obtain reimbursements when they were entitled to them.

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

127.    As a direct and proximate result of its reliance on BCBS' misrepresentations, Plaintiffs have been harmed in an amount in excess of the jurisdictional floor.

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

### Count Five: Declaratory Judgment

128.    The allegations set forth above are re-alleged and incorporated as if set forth fully herein.

**ANSWER:**    BCBSTX incorporates its answers and denials to the preceding allegations as

if set forth herein.  BCBSTX further states that the Court dismissed Plaintiffs' declaratory

judgment claim as to non-HCSC BlueCard claims, and therefore denies any allegations as to

such claims on that basis.  *See* Order at 15, Dkt. 152.

129.    As mentioned above, the Texas Insurance and Administrative Codes impose a number of requirements on providers when determining the allowed reimbursement amount for care rendered in emergency situations.   Protections afforded by the Texas Insurance Code are largely instituted to protect Texas consumers of medical insurance policies.  To begin, Chapter 1301 of the Texas Insurance Code pertains to Preferred Providers and out-of-network providers, along with FECs duly licensed under Chapter 254 of the Texas Health and Safety Code.  Similarly, Chapter 1271 of the Texas Insurance Code applies to HMOs.  Under both chapters, BCBS is required to reimburse FECs at the usual and customary rate.

**ANSWER:**    BCBSTX denies the allegations in the first sentence of this paragraph.

BCBSTX admits that certain provisions of the Texas Insurance Code and Texas

Administrative Code are designed to protect insureds from balance billing practices by out-

of-network providers.  BCBSTX admits that free-standing emergency care facilities may be licensed under Chapter 254 of the Texas Health and Safety Code.  BCBSTX admits that Chapter 1301 of the Texas Insurance Code pertains, in part, to preferred provider organization plans and that Chapter 1271 of the Texas Insurance Code pertains to health maintenance organizations.  BCBSTX admits that, effective beginning January 1, 2020, both Chapter 1301 and Chapter 1271 contained provisions that required reimbursement for out-of-network emergency care to be determined based on the health plan's "usual and customary rate."  BCBSTX denies the remaining allegations of this paragraph.

130.    For emergency claims falling under the requirements of Chapter 1301 of the Texas Insurance Code, the reimbursement amounts for emergency care must be read in conjunction with the Texas Administrative Code.  See TEX. ADMIN. CODE § 3.3701. Insureds are entitled to freedom of choice not only when electing preferred providers, but insureds must also "have the right to emergency care services as set forth in Insurance Code…§1301.155, §3.3708 of this title (relating to Payment of Certain Basic Benefit Claims and Related Disclosures)..."  See TEX. ADMIN. CODE § 3.3701(5) and (7) (stating that the "rights of an insured to exercise full freedom of choice in the selection of a physician" is not restricted by the insurer).

ANSWER:    BCBSTX denies the allegations in this paragraph.

131.    Section 1301.155 referenced above relates to emergency care rendered to an insured when a preferred provider cannot be reached, and the insured believes under the prudent layperson standard that immediate medical care is required.  See TEX. INS. CODE § 1301.155.  As a preliminary matter, Texas Insurance Code § 1301.056 prohibits BCBS from reimbursing FECs on a "discounted fee basis." See TEX. INS. CODE § 1301.056.  On top of this prohibition, Texas Administrative Code § 3.3708 requires BCBS to pay FECs providing emergency care the usual and customary rate less any patient coinsurance, copayment, or deductible responsibility under the plan.  See TEX. ADMIN. CODE § 3.3708.  Additionally, the usual and customary rate amount is to be "based on generally accepted industry standards and practices for determining the customary billed charge for a service and that fairly and accurately reflects market rates, including geographic differences in costs."  Id. at (c)(1).

ANSWER:    BCBSTX denies the allegations in this paragraph.

132.    Similarly, HMOs are required to "pay for emergency care performed by non-network physicians or providers at the *usual and customary rate* or at an agreed rate."  See TEX. INS. CODE § 1271.155 (emphasis added).

**ANSWER:**    BCBSTX admits that the quoted portion of the paragraph appears in Texas

Insurance Code section 1271.155.   BCBSTX denies the remaining allegations of this

paragraph.

133.    And BCBS' own insurance plans and the plans BCBS administers require coverage of insureds for emergency care at the "usual and customary rate," including emergency care provided by out-of-network providers.

**ANSWER:** BCBSTX admits that BCBSTX has issued PPO and HMO insurance policies in

Texas that include coverage for certain defined emergency care.  BCBSTX admits that the

"usual and customary rate" as used in Texas statutes applicable to Texas insured health plans

refers to the insurer's usual and customary rate of reimbursement, as determined by the

insurer.  BCBSTX denies that all health plans for which BCBSTX is the claims administrator

define coverage for emergency care as set forth in this paragraph.  BCBSTX denies the

remaining allegations of this paragraph.

134.    Despite the clear requirement to reimburse FECs who render care in emergency situations at usual and customary rates, BCBS engages in practices to obfuscate the allowable reimbursable amount being paid to FECs with the clear intention of avoiding payment in accordance with usual and customary rates.

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

135.    Likewise, BCBS has also violated the ACA's greater-of-three requirement by failing to provide benefits for emergency care in an amount at least equal to the greatest of: (1) amount negotiated with in-network providers; (2) the amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services (such as the usual, customary, and reasonable amount); and (3) the amount paid under Medicare.  *See* 45 CFR § 147.138(b)(3). The greater-of-three requirement is enforceable via a claim for ERISA benefits under section 502(a)(3) of ERISA. *See* 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 1185d(a)(1).

**ANSWER:**    BCBSTX denies the allegations in this paragraph.

136.    To correct these improper actions and violation of statutes, Plaintiffs seek a declaratory judgment from this Court determining their rights to reimbursement for services rendered at the usual and customary rate and in proper accordance with the above-mentioned statutes and BCBS' own contractual obligations. 28 U.S.C. § 2201.

**ANSWER:**    BCBSTX admits that Plaintiffs purport to seek a declaratory judgment from

this Court but denies there is any basis in law or fact for such a judgment.  BCBSTX denies

the remaining allegations of this paragraph.

137.    A declaratory judgment is proper when the question of construction of statutes
is necessary to determine a party's rights and obligations.  *See id.*  In addition to determining
BCBS' reimbursement requirements as set forth in the applicable statutes, Plaintiffs also seek
a declaratory judgment that damages, in an amount to be determined at a trial on the merits, is
owed in addition to costs and attorneys' fees.

**ANSWER:**    BCBSTX admits that Plaintiffs purport to seek a declaratory judgment from

this Court but denies there is any basis in law or fact for such a judgment.  BCBSTX denies

the remaining allegations of this paragraph.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

**ANSWER:**    BCBSTX denies that all claims asserted in this action are triable to a jury.  No

further response is necessary to this paragraph.

### PRAYER FOR RELIEF

Wherefore, premises considered, Plaintiffs seek:

1.  An order requiring Defendant to pay Plaintiffs actual damages
to fully compensate them for losses sustained as a result of Defendant's breaches and/or unlawful
conduct;

**ANSWER:**    BCBSTX denies the allegations in this paragraph and states that Plaintiffs are

not entitled to any relief against BCBSTX.

2.  An order awarding Plaintiffs restitution in an amount of the
benefit wrongly and/or unlawfully obtained by Defendant;

**ANSWER:**    BCBSTX denies the allegations in this paragraph and states that Plaintiffs are

not entitled to any relief against BCBSTX.

3. An order awarding punitive and/or exemplary damages;

**ANSWER:**     BCBSTX denies the allegations in this paragraph and states that Plaintiffs are

not entitled to any relief against BCBSTX.

4. A declaratory judgment in favor of Plaintiffs finding and determining that:

i. The Texas Insurance Code and Texas Administrative Code require
Defendant to reimburse Plaintiffs at a usual and customary
rate;

ii. Defendant must base the usual and customary rate at which reimburses
Plaintiffs "on generally accepted industry standards and
practices for determining the customary billed charge for a service and that
fairly and accurately reflects market rates, including geographic differences
in costs";

iii. Defendant failed to pay Plaintiffs at usual and customary
rates; and

iv. Plaintiffs are entitled to damages from Defendant, in an
amount to be determined at a trial on the merits, and all other appropriate
relief.

**ANSWER:**     BCBSTX denies the allegations in this paragraph and states that Plaintiffs are

not entitled to any relief against BCBSTX.

5. An order requiring Defendant to pay costs and expenses of this lawsuit, including
reasonable attorneys' fees incurred by Plaintiffs in prosecuting this action;

**ANSWER:**     BCBSTX denies the allegations in this paragraph and states that Plaintiffs are

not entitled to any relief against BCBSTX.

6. Pre-judgment and post-judgment interest to the extent allowed by law; and

**ANSWER:**     BCBSTX denies the allegations in this paragraph and states that Plaintiffs are

not entitled to any relief against BCBSTX.

7. Such costs and further relief as this Court deems appropriate.

**ANSWER:**     BCBSTX denies the allegations in this paragraph and states that Plaintiffs are

not entitled to any relief against BCBSTX.

*       *       *

**ANY ALLEGATION IN THE COMPLAINT NOT SPECIFICALLY ADMITTED IS**

**EXPRESSLY DENIED.**

*       *       *

<u>**AFFIRMATIVE DEFENSES**</u>

Without accepting any burden of proof that would not otherwise be borne by BCBSTX, BCBSTX pleads the following non-exhaustive defenses:

1.   Plaintiffs' claims are barred in whole or in part because they fail to state claims upon which relief can be granted.

2.   Plaintiffs' claims, with respect to all benefit claims arising out of ERISA-governed self-funded benefit plans, are barred in whole or in part because BCBSTX is not the proper defendant.

3.   Plaintiffs' claims are barred for failing to exhaust the administrative remedies under state governmental plans and ERISA, including, but not limited to, failures to appeal any adverse benefit determinations.

4.   For all Texas-insured claims on or after January 1, 2020, Plaintiffs claims are barred for failing to exhaust the mandatory dispute resolution procedures pursuant to Senate Bill 1264.  *See* Tex. Ins. Code Ch. 1467.

5.   For all claims relating to health coverage provided by the Teacher Retirement System of Texas ("TRS"), BCBSTX is immune from suit under the Eleventh Amendment and principles of sovereign immunity.  The Court also lacks subject matter jurisdiction over these claims.

6.   The Court lacks subject matter jurisdiction over all claims relating to health coverage provided by the Employees Retirement of System of Texas ("ERS"). The Court has dismissed all ERS claims for lack of subject matter jurisdiction.  Order at 19, Dkt. 152.

7.   For all claims relating to health coverage funded by the State of Texas or its political subdivisions BCBSTX is immune from suit and liability under the Eleventh Amendment and principles of sovereign and/or governmental immunity.

8.   Certain of Plaintiffs' claims are barred by limitations, including the applicable statute of limitations, statute of repose, and/or based on information and belief, the doctrine of estoppel and/or unclean hands and/or the doctrine of laches.

9.   Plaintiffs have failed to satisfy the conditions precedent, and/or failed to show that such conditions occurred, to asserting a breach of contract or other claim.

10. BCBSTX is entitled to any offset to Plaintiffs' claims for amounts paid to Plaintiffs, and Defendant pleads the affirmative defenses of credit, recoupment, and offset.

11. BCBSTX pleads and hereby invokes all caps, limitations, or restrictions on recovery of damages as allowed by Texas and federal law.

12. Plaintiffs' claims are barred in whole or in part by one or more of the express provisions of the policies applicable to Plaintiffs' claims, and this constitutes a complete defense to the legal claims contained in Plaintiffs' complaint.

13. Certain of Plaintiffs' claims are barred in whole or in part by plan-term limitations, including anti-assignment provisions.

14.  Certain of Plaintiffs' claims are barred in whole or in part by a lack of standing; thus Plaintiffs' claims should be dismissed for lack of standing under Rule 12(b)(1).

15. Plaintiffs' claims are preempted, in whole or in part, under ERISA and/or other applicable federal statutes.

16. Plaintiffs' claims relating to health plans insured by entities other than BCBSTX; health plans that have contracted with an entity other than BCBSTX to perform administrative services; and self-funded health plans for which BCBSTX is a contracted provider of administrative services are all barred for failure to join indispensable parties.

17. Plaintiffs' claims are barred by the doctrines of accord and satisfaction, novation, ratification, and waiver.

18.  Plaintiffs' negligent misrepresentation claim is barred in whole or in part and/or limited based on the comparative fault of Plaintiffs or third parties under Chapter 33 of the Texas Civil Practice & Remedies Code.

19. Plaintiffs' damages, if any, must be reduced based on their failure to mitigate.

20. Any award of punitive damages would violate the excessive fines clause of the Eighth Amendment of the United States Constitution.

21. Any award of punitive damages based upon vague, undefined standards of liability and not supported by clear and convincing evidence would violate the due process clause of the United States Constitution and Texas Constitution.

BCBSTX reserves the right to assert additional affirmative defenses that are supported by information or facts obtained through discovery or other means during this case and expressly reserves the right to amend this answer and assert such additional affirmative defenses in the future.

Dated: May 9, 2022

Respectfully Submitted,

BY: *Paige Holden Montgomery*
Paige Holden Montgomery
Texas Bar No. 24037131
pmontgomery@sidley.com
Natali Wyson
Texas Bar No. 24088689
nwyson@sidley.com
Claire Homsher
Texas Bar No. 24105899
chomsher@sidley.com
Mehzabin Lora Chowdhury
lchowdhury@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 981-3300
(214) 981-3400 (facsimile)

Brian P. Kavanaugh
Texas Bar No. 24115132
bkavanaugh@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
(312) 853-7036 (facsimile)

and

Robert W. Weber
Texas State Bar No. 21044800
**SMITH WEBER, L.L.P.**
5505 Plaza Drive
Texarkana, TX 75503
TEL:  903-223-5656
FAX:  903-223-5652
E-mail: bweber@smithweber.com

**COUNSEL FOR DEFENDANT BLUE CROSS
AND BLUE SHIELD OF TEXAS, A DIVISION
OF HEALTH CARE SERVICE
CORPORATION, A MUTUAL LEGAL
RESERVE COMPANY**

48

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure and this Court's CM/ECF filing system on May 9, 2022.

/s/ *Paige Holden Montgomery*
Paige Holden Montgomery